## HILLOCK v. GRAPE.

(Supreme Court, Appellate Division, Fourth Department. March 7, 1906.)

1. EVIDENCE—CONCLUSIONS—PARTNERSHIP—EVIDENCE—SUFFICIENCY.

Evidence that it was witness' understanding that plaintiff was to be a joint owner with defendant in all the assets of a firm and that it was the agreement that plaintiff should have half the money and a half interest in the horses, wagons, and sleighs belonging to the firm, were mere conclusions and insufficient to sustain a judgment awarding plaintiff one-half of the value of such equipment in a suit for an accounting on dissolution.

2. PARTNERSHIP—CONTRACT—CONSTRUCTION—PARTNERSHIP EQUIPMENT.

Where a partnership agreement provided that defendant should put up his property against plaintiff's experience, and the two should engage in business as a firm, such agreement implied at most, only a partnership as to the profits, and not a community of interest in the equipment which defendant put up against plaintiff's experience.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Partnership, §§ 93½, 100.]

Kruse and Spring, JJ., dissenting.

Appeal from Monroe County Court.

Action by Thomas Hillock against John Grape. From an interlocutory judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Thomas Raines, for appellant.
John H. Keef, for respondent.

NASH, J. This is an action to establish a copartnership and for an accounting. The copartnership is denied. The complaint alleges that on, or about the 1st day of March, 1901, at the city of Rochester, N. Y., the plaintiff and defendant entered into a general trucking and carting copartnership, each to be an equal partner therein, the firm name to be Grape & Hillock; and the assets of the firm at the first were to consist of four horses and two wagons put into said business by said Grape, against the knowledge and experience Hillock had of and in trucking and carting business; they to own said property so put in and whatever other property bought thereafter for such business, jointly. That such copartnership has been carried on ever since such date, and has made about the sum of $2,900 for the year 1901, $4,800 for the year 1902, $6,250 for the year 1903, and $5,320 for the year 1904 to September 1st, 1904, making $19,270 received in cash by such copartnership since said 1st day of March, 1901, besides the trucks, carts, horses, and harnesses now owned by such copartnership, namely, seven pairs of horses, wagons, sleighs, harnesses, and other property of the value of $6,000, and an established trade and business worth the sum of $2,000.

There were no written articles of copartnership. The witnesses who testified to the making of the alleged agreement on the part of the plaintiff, were Freckleton, a nephew of the plaintiff, and the plaintiff. Freckleton testified that Grape applied to him, and asked if he was

a nephew of Hillock, and if he knew whether his uncle would go into the carting business. That Grape said:

.“I have got five horses and a little money in the bank, and two wagons and a small wagon or sleigh, and why can't Tom and I go into business together, and he put up his experience against what I have got?”

Afterward Grape and Hillock having met, and had some negotiations, they came together and in the presence of Freckleton, made, it is claimed, the partnership agreement. Freckleton's testimony is:

“I said: 'Now, Mr. Grape, what do you intend to do? What are your plans? Mr. Hillock wants me to be a witness to this copartnership.' Grape said, 'I have five horses, two large wagons, a small wagon, the running gear bobs or sleigh, and about $600 in the bank to pay any running expenses they might have when they got started.' Q. Tell what one said, then what the other said. A. Grape said they would take, each of them, so much money out of the business each week, as the business would warrant after the business was started. No specified amount was named at that time. Q. Anything else said there? A. They said, 'we will get together,' and he said, 'I think I know where we can get another wagon or sleigh, or a top for a sleigh.' Q. Who said that? A. Grape. He made arrangements for Hillock to meet him to go to some wagon or blacksmith shop. Hillock said one of the first things they ought to do was to get some blanks they could put in the freight house, for authority to receive freight. He said he wanted the cards so he could start out with people he knew, and see if they could get their business. They started out, and agreed to go to the printers to get some cards. I did not hear any further conversation beyond a general line. Q. Did they say what they were going to call the business? A. Grape said he wasn't particular whether they called it Grape & Hillock, or Hillock & Grape. They decided on Grape & Hillock before they went away. After the talk was over, I asked Grape if something hadn't ought to be done about drawing papers about the copartnership. Grape said he had a friend, Assemblyman Smith, and he would have him draw the papers. That was practically the end of that conversation.”

Hillock testified that a few days after Grape first met Freckleton he saw Grape and they talked the matter over. He says that Grape said he had two teams and a single horse and two wagons and sleigh, and he would put them up against my experience in the business. That he afterwards went and looked at the property, and after some further negotiations, they met by appointment at a restaurant and made the agreement testified to by Freckleton.

Hillock's testimony:

“Q. What was said in the restaurant? A. Grape went over the same thing about the teams and the single horse and two wagons and sleigh and tools. He put them all up against my experience in the business, and he had money in the bank to pay freight bills. Then I made the agreement with him that I would go in with him. Q. How long after that did you start together in the carting business? A. About the 1st of March, 1901. Q. When you wanted any money did you draw it from the firm? A. Grape and I made arrangements that we would draw so much a week the first year, and go as light as we could till we got started. We made arrangements to draw $8 each. Q. And the next year? A. He said the next year we would draw $9 each, and in a few more years we could probably draw $15 a week.”

The defendant admits that a partnership was proposed and that he. had conversations with Hillock upon the subject, but denied that any partnership agreement was ever made. His claim is that Hillock entered into his employment in the carting business. That upon Hillock's

representations as to his ability to get work among his friends by the use of his name, cards with the name of Grape & Hillock upon them were used, and the name Grape & Hillock was put on one or two of the wagons and a sleigh. The plaintiff worked with the employés during the three years and a half, rendering services as a laborer. On pay day he received his money in an envelope with the rest of the men, and was docked as they were for lost time. The business was all transacted by Grape in his own name. He employed, directed, and paid all of the men, and made all the additions to the property by purchase in his own name.

The court below found as facts: (1) That on the 1st day of May, 1901, at Rochester, N. Y., plaintiff and defendant entered into an agreement, in and by which they agreed to form and did form a copartnership between them for an indefinite period, to conduct and carry on the business of drawing and conveying for hire, goods, and merchandise, and to conduct a general carting business at said Rochester, N. Y., under the firm name of Grape & Hillock; (2) that in and by said agreement defendant agreed to contribute to the capital and assets of said copartnership four horses and two wagons, and said plaintiff agreed to contribute to the business of said copartnership the knowledge and experience, which plaintiff had acquired in the trucking business; (3) that in and by said agreement the said parties further agreed that each partner should divide his time and energy to the prosecution of said business, and that said partners should share equally all profits and losses of said business; (4) that said copartnership continued and said business was prosecuted by said partners from and including said March 1st, 1901, to September 3d, 1904, when said partnership terminated by plaintiff's election, and notice thereof given by plaintiff to defendant.

It is further found that the partnership sold property from time to time, and acquired divers articles of property; that all purchases and sales were made by the defendant; that the plaintiff demanded of the defendant that he account to the plaintiff, and pay over to him the portion of the copartnership assets to which he should be found entitled, which was refused. And as a conclusion of law, that the plaintiff is entitled to an accounting by the defendant of and concerning all the property, assets, receipts, and disbursements, and business of the copartnership, from the beginning of the same to the termination thereof. It is so adjudged by the interlocutory judgment. The contention of the defendant is that the finding that an agreement of copartnership was entered into is against the weight of the evidence. Without passing upon that question, we conclude that a new trial must be granted, upon the ground that the decision, to the effect that the plaintiff is entitled to a portion or share of the property and assets of the business, is entirely unsupported by the evidence.

The witness Freckleton, on his cross-examination, testified that it was his understanding that Hillock was to be a joint owner with Grape of all the assets of the copartnership, including the horses, wagons, sleighs, harnesses and the equipments, and the $600 in the bank, put in by Grape. The plaintiff was asked on cross examination:

"Q. You were to have half the money, and a half interest in the horses and wagons and sleighs, and the equipment? A, That was the agreement." These were mere conclusions; neither of them testified to any language of Grape to that effect. The language imputed to Grape by both Freckleton and Hillock on all occasions testified to by them, was that Grape would put up his property against Hillock's experience. The language attributed to Grape, as testified to by Freckleton and Hillock, that Grape would put up his property against Hillock's experience will not bear the construction put upon it by the decision. It implied, at most, only a partnership as to the profits, and not a community of interest in the property which Grape put up against Hillock's experience. Agreements by which one person contributes his labor and experience to the business of a copartnership for a share of the profits are often made. The rights of the parties are well understood by the persons concerned. The title to the property as capital put in against labor, remains in the owner; the profits only being shared by the parties. The construction put upon the alleged agreement by the plaintiff would work out a result which could not possibly have been intended by the defendant. The contract testified to, and as found, was for an indefinite period. If the title to an equal share of the horses, wagons, equipments, and money of Grape, passed to the plaintiff by virtue of the alleged agreement, Hillock could have terminated the copartnership at any time; at the end of a week he could have demanded that the defendant account to him for one-half of the property.

There is no evidence in the record that the additional property was purchased with the money or profits of the business. The purchases were all made by the defendant. The plaintiff did not participate in making them. Grape made the purchases, and paid for the property purchased, as far as appears, with his own money and means. At the time of the trial he was indebted to Hartung, of whom the additional horses were purchased, some 13 or 14 in number, upon his individual promissory notes, one for $800 and another of $500; and there was also an indebtedness of the defendant to the Hoffman Wagon Company on account, which had accrued in the course of the business, amounting to between $800 and $1,200.

Interlocutory judgment reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except SPRING and KRUSE, JJ., who dissent.

KRUSE, J. I dissent. I think the question was a fair question of fact whether the agreement between the parties was made as claimed by the plaintiff. If it was, it constituted a partnership, and the trial court having so found, such decision ought not to be disturbed by this court.

While the property which was put into the business by the defendant became the property of the firm, yet, upon an accounting, the plaintiff will receive the full benefit thereof, each party will be credited with the amount of capital contributed by him. The plaintiff seems to have had but a working interest in the firm, contributing his labor and business experience, while the defendant contributed substantially

all the capital, but the profits were their joint efforts, and should be divided between them, making the proper allowance for what one may have contributed to the capital more than the other.

I think the interlocutory judgment should be affirmed, with costs.