THOMPSON, Respondent, v. BETH, Appellant.

*September 6—October 3, 1961.*

For the appellant there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil*.

For the respondent there was a brief by *Baumblatt & Goodman* of Racine, and oral argument by *Robert P. Goodman*.

DIETERICH, J.   The plaintiff's complaint alleges that on or about December 15, 1949, an oral agreement was entered into between the plaintiff and the defendant for the purchase of 200 feet of lake property located in Marinette county known as "Lakebreeze Resort," and for the construction, erection, and operation of a resort thereon. The complaint further alleges that the plaintiff furnished cash, materials, and labor in the construction and erection of said cottages and the operation of the resort from December 15, 1949, to September 24, 1958.

The defendant denies that he entered into an oral agreement for the creation of a partnership, and alleges that it was agreed that at such time that the plaintiff would furnish capital equal to that of the defendant, a partnership agreement would be entered into, that the plaintiff failed to furnish such capital and that all of the capital used in the construction of the buildings and purchase of the property was furnished by the defendant, excepting the sum of approximately $400.

The issues in this case are: (1) Did the plaintiff and defendant enter into an agreement creating a partnership? (2) Did the labor contributed by the plaintiff constitute capital such that he would be entitled to a one-third capital interest in the partnership? (3) Is the plaintiff entitled to interest on his share of the sum received by the defendant for the sale of the partnership property from the date of sale?

Ward Thompson, plaintiff, and Raymond A. Beth, defendant, residents of Racine and Kenosha, respectively, met each other in 1947, at Crivitz, Wisconsin.

The plaintiff was employed as an electrician and was employed as a general superintendent of building construc-

tion from 1954 until 1955. The defendant was employed for thirty-five years at American (Nash) Motors as a supervisor.

The testimony reveals the following facts: In the summer of 1948, the plaintiff together with the defendant and his wife Eva, now deceased, vacationed at Lake Noquebay, near Crivitz. During this time the plaintiff and defendant learned that the lake property, the subject of this action, was for sale, and after some discussion they decided to purchase 200 feet of lake frontage. The plaintiff testified that the defendant Beth was to pick up the option and the plaintiff was to do the construction work. On that basis they were to be 50–50 partners. In July, 1948, the defendant paid $100 to the agent of the owner on an option to purchase. An attempt was made to borrow money to finance the purchase of the property from the Crivitz Bank in November, 1949. At that time, the defendant said that partnership papers would be drawn up as soon as a mortgage was obtained. They failed to obtain the mortgage at the Crivitz Bank and on the same day proceeded to the Farmers & Merchants Bank in Marinette. While the parties were traveling to Marinette they again discussed the partnership, the plaintiff agreeing to do the construction work, and the defendant Beth stating that he and the plaintiff would be 50–50 partners.

The warranty deed in evidence discloses that title to the 200 feet of lake property was purchased from Hazel Forest for the sum of $2,000. The deed is dated December 15, 1949, and recorded in the office of the register of deeds of Marinette county on the 27th day of December, 1949, at 9:20 a. m., in Vol. 195 Deeds, page 19. A mortgage was executed by Raymond Beth and Eva Beth, his wife, securing a promissory note in favor of the Farmers & Merchants Bank of Marinette in the sum of $1,000. The mortgage is dated December 16, 1949, and recorded on December 27,

1949, at 9:25 a. m., in Vol. 193 Mortgages, page 616. The balance of $900 was paid by the defendant from a Christmas savings account.

The plaintiff, during the winters of 1948 and 1949, drew plans for the main lodge. In addition, the parties cleared and stacked certain used lumber acquired from Nash Motors of Kenosha, Wisconsin.

During the month of May, 1949, the plaintiff and defendant negotiated with various cement contractors for the construction of footings for the main lodge building and on May 30, 1949, hired a contractor to complete the foundation. In July, 1949, plaintiff and defendant took vacations together and started construction of the main lodge building, after which they worked every weekend into October, when the lodge was closed for the winter.

During the winter months of 1949 and 1950, the plaintiff constructed the kitchen cabinets and sink cabinets in the basement of the defendant's residence in Racine. The plaintiff and defendant continued to work on the main lodge during the summers of 1950 and 1951.

In 1952, construction was started on two rental cottages which the plaintiff had designed. The plaintiff roughed in the two cottages and did some of the electrical work and plumbing.

The testimony further discloses that the plaintiff in 1953 orally agreed to reduce his share of the partnership to one third and the defendant and plaintiff further agreed that the defendant and the defendant's wife, Eva, should each have a one-third interest in the partnership. The property was named Lakebreeze Resort during the year of 1953.

The record and testimony establish that the plaintiff and defendant continued to spend their vacations and weekends at Lakebreeze improving and operating the resort until the fall of 1958, when the premises were sold by the defendant

for $14,250. During this period of time the defendant had invested something over $13,000 in the partnership venture and the plaintiff had invested approximately $400 and over two thousand hours of labor. The plaintiff made demand for an accounting and for payment of his one-third share of the proceeds from the sale of the property, which demand was refused by the defendant.

### (1) *Existence of partnership.*

Since a specific partnership agreement was never drawn and executed, the question of whether a partnership agreement existed must depend on the oral testimony and the conduct of the interested parties.

A perusal of the record reveals an abundance of evidence which supports the trial court's finding that a partnership agreement did exist between the plaintiff and defendant. Much of this evidence stems from inferences to be drawn from the acts of the defendant.

The partnership tax returns executed by the defendant on behalf of the partnership for the years 1953 through 1957, credited the plaintiff as being a partner with a one-third interest in the partnership. Interest payments, taxes, depreciation, and repairs were included as deductible items from the income of the property designated as Lakebreeze.

It is apparent from the income-tax returns, the testimony, and the entire record, that the real estate was purchased for partnership purposes and appropriated to those purposes and therefore necessarily became partnership property, it being immaterial in what manner or that it was purchased in the name of the defendant and his wife. They held the legal title to the land as trustees for the partnership. *Kyle v. Carpenter* (1907), 130 Wis. 310, 110 N. W. 187.

The defendant also ordered certain advertising to be issued, including the erection of a sign, declaring the defendant and plaintiff to be the proprietors of Lakebreeze Resort. Testimony also shows that the defendant referred to the plaintiff as his partner.

Other evidence tending to show the existence of a partnership establishes that the defendant and plaintiff applied for electrical service and that such service was placed in both parties' names. The plaintiff purchased a truck with the title placed in the name of Lakebreeze and when the truck was sold the defendant and plaintiff divided the proceeds among themselves. The plaintiff made periodic payments to the defendant's wife, who acted as treasurer, in response to her statements as to how much he owed as related to partnership debts. The defendant gave plaintiff a check for $1,200 in 1955, to buy his interest in the main lodge. The check was not cashed, and in 1959, the defendant gave plaintiff a check for $1,000 marked, "paid in full," which the plaintiff did not cash. All the evidence and testimony clearly establishes the partnership, only the testimony of the defendant refutes it.

(2) *Nature of the plaintiff's interest in the partnership.*

The plaintiff's contribution to the partnership was to do a substantial amount of the construction work. This he did, investing something over two thousand hours of his time and $400 in cash. He was not only a skilled cabinetworker, but an electrician by trade, and capable of doing plumbing, drawing plans, and carpenter work as well.

The contention of the plaintiff is that his contribution of skill and labor constitutes a capital interest in the partnership assets. The defendant on the other hand insists that

the plaintiff is not entitled to either compensation or to consideration of his contribution as a capital investment.

The real issue in the case is whether, under the following statutes, the plaintiff's labor in the construction of the buildings comes within the definition of the words "contribution" and "capital" as used in the statutes.

Sec. 123.15 (1), Stats., provides as follows:

"RIGHTS AND DUTIES OF PARTNERS. The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

"(1) Each partner shall be repaid his *contributions,* whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; . . ." (Italics ours.)

Sec. 123.15 (6), Stats., reads as follows:

"No partner is entitled to remuneration for acting in the partnership business, . . ."

Sec. 123.35 (1), (2), (3), Stats., provides:

"SETTLEMENT AND DISTRIBUTION ON DISSOLUTION. In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:

"(1) The assets of the partnership are (a) the partnership property, . . .

"(2) The liabilities of the partnership shall rank in order of payment, as follows: . . . (c) those owing to partners in respect of *capital;* . . .

"(3) The assets shall be applied . . . (1) to the satisfaction of the liabilities." (Italics ours.)

Sec. 123.15 (6), Stats., applies where a partner has been active in contributing his skill and labor toward the affairs of the partnership on a day-to-day basis. There, his labor

is compensated for by a share in the partnership profits. This section does not apply where the skill and labor of the partner are his contribution to the capital assets of the partnership, as in the instant case. The return of such contribution on liquidation is not remuneration, but a return of capital investment.

In *Farris v. Commissioner of Internal Revenue* (10th Cir. 1955), 222 Fed. (2d) 320, 322, the court said:

"The basic concept of a general partnership is that all parties make a contribution thereto and as a result share in the assets, the profits and losses, according to their contribution. In the absence of a contrary provision in the agreement where one partner contributes money or physical assets and other contribute personal services, skill, and knowledge, they share in the capital assets according to the value placed on each contribution."

The case was a trial to the court, and it is an elementary principle of law of this court that the findings of the trial court will not be set aside on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *Barker Barrel Co. v. Fisher* (1960), 10 Wis. (2d) 197, 102 N. W. (2d) 107.

(3) *Allowance of interest.*

Sec. 123.18 (1), Stats., reads in part:

"PARTNER ACCOUNTABLE AS FIDUCIARY. (1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the . . . liquidation of the partnership . . ."

The books of the partnership were in the defendant's possession. The defendant's wife had charge of the bookkeeping until her death in 1955. After that date the de-

fendant performed this task. The defendant has been trustee of the partnership property, sold this property, kept the books of the partnership, and has refused to make an accounting to the plaintiff.

*Dimond v. Henderson* (1879), 47 Wis. 172, 2 N. W. 73, held that while a partner is generally not chargeable with interest on money in his hands belonging to the firm, yet where one partner kept the account books, and knew, or ought to have known, the precise amount in his hands belonging to the firm, he should be chargeable with interest.

In Anno. 65 A. L. R. (2d) 513, 520, it is stated that the question of the allowance of interest depends upon the circumstances of the particular case, and is largely discretionary with the court. And, that interest will be allowed if the equities require.

While it may be true that the defendant in the case at bar did not know precisely the amount due the plaintiff, such sum could easily have been determined on September 24, 1958, when the assets were sold. However, the defendant at no time made any effort to satisfy the plaintiff's claim for his one-third partnership interest. It certainly would be inequitable to allow defendant to use money rightfully belonging to his partner, the plaintiff, freely and without interest thereon. Accordingly, the plaintiff is entitled to interest at five per cent from September 24, 1958.

*By the Court.*—The judgment is modified by increasing the amount of the plaintiff's damages of $4,482.91 so as to include interest on said amount at the statutory rate of five per cent from September 24, 1958, and, as so modified, is affirmed.