MARSHALL, Appellant, v. BELLIN, Respondent.

*March 1—March 30, 1965.*

For the appellant there was a brief by *Jerome H. Block,* and oral argument by *Gerald J. Bloch,* both of Appleton.

For the respondent there was a brief by *Van Susteren, Bollenbeck, Patterson, Froelich & Jensen* and *Edward R. Bollenbeck,* all of Appleton, and oral argument by *Joseph A. Van Susteren.*

HALLOWS, J.   The facts giving rise to the issue are not disputed.  Only the plaintiff and a physical therapist testified. Marie Brown suffered a fracture of her ankle on March 28, 1959, and was taken to the Appleton Memorial Hospital where her personal physician Dr. James Laird called in the plaintiff, an orthopedic surgeon, to treat her.  The plaintiff gave Marie Brown emergency treatment but since she was under sedation did not discuss with her the payment of any bill for his services which she would incur.  The next day the plaintiff talked to the defendant in the hall outside Marie

Brown's hospital room about her injuries. The plaintiff did not know either the defendant or Marie Brown and thought the defendant was her husband. According to the uncontradicted testimony of the plaintiff, the defendant "volunteered at that time that I shouldn't worry about the medical expenses; that he would take care of the expenses." In reference to this meeting the plaintiff also testified the defendant said, "The usual thing which is—Don't worry about the bill Doc, I'll take care of everything."

On April 2d the plaintiff performed surgery on Marie Brown's ankle and she was discharged from the hospital on April 7th but continued treatments at the plaintiff's office. During one of these visits, either on April 22d or 27th, the defendant according to the testimony of the plaintiff "brought up again the question of her account" and "he wanted to know how Marie was coming along and he again volunteered that he would take care of the account."

Sometime in July, 1959, the plaintiff was informed Marie Brown was not the wife of the defendant but that she was going to marry him. About this time the plaintiff according to his office practice commenced sending bills to Marie Brown monthly. In March and in May, 1960, the defendant sent a $10 check to the plaintiff with a notation thereon that it was for Marie Brown's account. At the trial the plaintiff's bill of $640 was stipulated as reasonable.

The issue is whether the defendant's oral promise is an unconditional and a primary or original one, and thus outside the statute of frauds, sec. 241.02 (2), Stats.,[1] or is a collateral promise to answer for the debt of another and void because not in writing and subscribed by the defendant.

[1] "241.02 AGREEMENTS, WHAT MUST BE WRITTEN. In the following case every agreement shall be void unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith: . . . .

"(2) Every special promise to answer for the debt, default or miscarriage of another person."

While the facts are not in dispute, the distinction between a promise to answer for the debt of another within the statute and an independent principal promise which is without the statute is universally and traditionally difficult to make.

Many mechanical tests have been evolved and espoused in the cases for determining the nature of the undertaking. Recently in *Mann v. Erie Mfg. Co.* (1963), 19 Wis. (2d) 455, 462, 120 N. W. (2d) 711, we examined the nature of this problem in relation to the statute of frauds and especially to the beneficial-consideration theory as the test of an original promise. We stated the nature of an oral promise should be determined as a matter of the parties' intent free from "the mechanical application of generalized rules of assumed intention." We pointed out the important considerations were "the form of the promise, the nature of the consideration, the language of the promise used in light of the circumstances, the motive and object of making the promise."

The trial court found the defendant did not intend his oral promise to be an original undertaking. The evidence is skimpy and unsatisfactory to sustain the plaintiff's burden of proof. The exact language of the oral promise is not in the record and therefore there is considerable doubt just what the defendant promised or intended to promise. It is pointed out that the trial court's finding that the defendant's promise was not an original undertaking is a finding of fact based upon a reasonable inference and not against the great weight and clear preponderance of the evidence and should not be disturbed on appeal. Had the trial court found the opposite, namely, that it was an original undertaking, we would have upheld that result.

The plaintiff argues the defendant's oral promise is taken out of the statute of frauds because the payment by the two checks constitutes part performance. This activity was by the promisor rather than the promisee which is required under the fraud theory of part performance. However, we

think the equitable doctrine does not apply to oral promises to answer for the debt of another. See *Rowell v. Smith* (1905), 123 Wis. 510, 102 N. W. 1. The equitable doctrine of part performance applies generally to the sale of land. See 3 Williston, Contracts (3d ed.), p. 770, sec. 533; *Huntoon v. Powell* (1928), 88 Cal. App. 657, 263 Pac. 1030; *Andress Motor Co. v. Hamilton & Horn Motor Co.* (La. App. 1948), 35 So. (2d) 272; 49 Am. Jur., Statute of Frauds, p. 803, sec. 500; and 37 C. J. S., Frauds, Statute of, p. 773, sec. 253.

*By the Court.*—Judgment affirmed.