In re Estate of Schaefer: Schaefer, Petitioner-Appellant, v. Schaefer, and others, Respondents.*

*Nos. 101, 167 (1974). Submitted on briefs January 7, 1976.—
Decided May 14, 1976.*
(Also reported in 241 N. W. 2d 607.)

---

* Motion for rehearing denied, with costs, on July 12, 1976.

For the appellant the cause was submitted on the briefs of *Marilynn H. Schaefer,* pro per of Kenosha.

For the respondents the cause was submitted on the brief of *Brown, Black, Riegelman & Kreul* of Racine.

For the appellant there was a brief by *Marilynn H. Schaefer,* pro per of Kenosha.

For the respondents there was a joint brief by *Brown, Black, Riegelman & Kreul* of Racine, for executors-respondents, and *Meldman Ltd.,* of Milwaukee, cocounsel for executors.

DAY, J. The orders appealed from arise out of a single petition filed in probate court by Marilynn H. Schaefer, widow of the decedent, Ben G. Schaefer, concerning a large number of matters in the administration

of the estate.[1] As the result of a pretrial conference the issues raised by the petition were bifurcated for hearing. The principal issue concerns real estate inventoried as property of a business partnership between Ben Schaefer and his brother, Arthur Schaefer, and claimed by Marilynn Schaefer to have belonged to the brothers as tenants in common. Appeal No. 101 is taken from an order denying her petition in this respect. Various other parts of the petition were treated by the trial court in a separate order, from which Appeal No. 167 has been taken.

## Appeal No. 101

Ben G. and Arthur E. Schaefer went into business together in 1933, each providing an equal capital share to start an automobile dealership in Racine, which came to be known as Schaefer Pontiac Sales. No written partnership agreement was ever executed. The brothers began acquiring real estate in 1944, making purchases through 1967 which included items 26 through 38 of the inventory, which are at issue here. The deeds to all 13 parcels are included in the record; nine of the deeds name the grantees simply as "Ben G. Schaefer and Arthur E. Schaefer;" three of the deeds name the grantees as "Ben G. Schaefer and Arthur E. Schaefer, as tenants in common," and one deed refers to "Ben G. Schaefer and Arthur E. Schaefer, a real estate partnership."

In 1947, the automobile sales activity was incorporated, and separated from the real estate business which became known as "Ben G. Schaefer and Arthur E. Schaefer, Real

[1] Settlement of this estate has reached this court three times before, first when Marilynn Schaefer unsuccessfully challenged the admission of her husband's will (52 Wis. 2d 471, 190 N. W. 2d 538), secondly when Marilynn Schaefer unsuccessfully sought to remove the executors (appeal dismissed by stipulation), and thirdly when Marilynn Schaefer unsuccessfully sought a construction of the will (61 Wis. 2d 736, 212 N. W. 2d 170).

Estate Department." A separate checking account was maintained for the real estate business, titled "Ben G. Schaefer and Arthur E. Schaefer, Real Estate Trust Account, Partnership." The respondents introduced testimony by an accountant, retained to examine the business records, to the effect that all payments for real estate purchased, and all proceeds from real estate sold, and income from leases, came from or went into this checking account. When mortgage loans were obtained, the proceeds went into the "partnership" bank account, and the amortization payments came from that account. When improvements were made to property held by the business, they were paid for out of the "partnership" account. This testimony was uncontradicted, and was accepted as true by the trial court.

Various documents in the record provide additional evidence concerning the understanding of the Schaefer brothers as to ownership of the real estate. A mortgage on one of the parcels in question was given by "Ben G. Schaefer and Arthur E. Schaefer, as co-partners." Leases were introduced by the respondents as follows:

(1) Lease from "Ben G. Schaefer and Arthur E. Schaefer, d/b/a Schaefer Realty Company," signed by Arthur E. Schaefer alone;

(2) Lease from "Ben G. Schaefer and Arthur E. Schaefer," signed by Arthur E. Schaefer as "Partner," alone;

(3) Lease from "Arthur E. Schaefer and Ben G. Schaefer, co-partners," signed by Arthur E. Schaefer alone; and

(4) Lease from "Ben G. Schaefer and Arthur E. Schaefer, a partnership" signed by Arthur E. Schaefer as "partner," alone.

In an attempt to show that the real estate was not regarded as partnership property, Marilynn Schaefer introduced additional leases as follows:

(1) Lease with option to buy from "Arthur E. Schaefer and Colette Schaefer, his wife, and Ben G. Schaefer and Marilynn Schaefer, his wife," signed by all four lessors;

(2) Lease from "Ben G. Schaefer and Arthur E. Schaefer," signed by both of them;

(3) Lease from "Ben G. Schaefer and Arthur E. Schaefer," signed by Arthur E. Schaefer, alone.

Marilynn Schaefer also introduced documents relating to a condemnation proceeding which referred to "lands of Ben G. Schaefer and Marilynn Schaefer, his wife; Arthur E. Schaefer and Colette Schaefer, his wife," and a deed conveying some of the business property from the Schaefers and their wives, individually named. The proceeds of that condemnation, however (as well as prior rental income from that property), went into the "partnership" books, and were distributed to Ben and Arthur accordingly. Arthur testified that the wives' names were included "because the attorneys wanted them, not because they [the wives] had any interest," although he was referring to a deed not admitted into evidence.

Respondents also introduced testimony based on tax returns filed between 1948 and 1969 by the business on tax forms designed for partnerships, and by Ben G. Schaefer individually, showing that the income of the real estate operation was divided equally between Ben and Arthur, and that Ben's reported income coincided with the amount distributed by the business. This testimony was undisputed, except insofar as Marilynn extracted the concession that the partnership tax return forms might be used for nonpartnership business arrangements.

On this evidence, the trial court found that a partnership existed, and that the real estate was partnership property. Marilynn Schaefer challenges the sufficiency of the evidence to support that finding, and makes legal

arguments based on the statute of frauds and the form of the deeds of conveyance.

The evidence overwhelmingly supports the trial court's finding that a partnership did exist. In *Skaar v. Department of Revenue* (1973), 61 Wis. 2d 93, 98, 99, 211 N. W. 2d 642, this court expressed the requirements for proof of a partnership:

"Since Wisconsin has adopted the Uniform Partnership Act, we must initially look there for guidance. Sec. 178.03 (1), Stats., defines a partnership as an 'association of 2 or more persons to carry on as co-owners a business for profit.' More specifically, it is recognized that four elements need be met so as to qualify as a partnership. Initially, the contracting parties must intend to form a bona fide partnership and accept the legal requirements and duties emanating therefrom. Secondly, there must exist a community of interest in the capital employed. Thirdly, there must be an equal voice in the management of the partnership. Finally, there must be a sharing and distribution of profits and losses."

The essentially uncontradicted evidence in this case establishes each of the four elements. Marilynn Schaefer's argument that a "community of interest" was not shown, because of a lack of evidence that each partner could dispose of the property, overlooks the leases introduced in evidence which were signed by Arthur E. Schaefer alone.

Once the existence of a partnership is established, there is a statutory presumption that property purchased with partnership funds belongs to the partnership unless a "contrary intent" is shown. Section 178.05 (2), Stats.[2] The evidence in this case is plainly insufficient to estab-

[2] "178.05 **Partnership property.** (1) All property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property.

"(2) Unless the contrary intention appears, property acquired with partnership funds is partnership property."

lish a "contrary intent." The only evidence of intent *not* to operate as a partnership are the references to "tenants in common" on three of the thirteen deeds conveying the lands in question to Ben and Arthur, and the inclusion of the Schaefers' spouses as grantors on the two conveyances introduced. Even if this would be sufficient to overcome the statutory presumption, it must be weighed against the overwhelming mass of evidence showing that the lands were purchased with partnership funds, managed as a partnership activity, and sold for partnership benefit.

Marilynn Schaefer attacks the probative value of the respondents' evidence, in particular the testimony concerning the "partnership" tax returns. Even assuming she is correct that "partnership" tax returns may be, and are, used for nonpartnership joint ventures of various sorts, the tax treatment of the income is not stripped of all probative value. This court has held that receipt of a share of business profits, as shown in tax returns, is *prima facie* evidence of partnership, under sec. 178.04 (4), Stats.[3] *Karp v. Coolview Inc.* (1964), 25 Wis. 2d 299, 305, 130 N. W. 2d 790. In any case, there is ample evidence independent of the tax returns to support the trial court's finding that a partnership existed and owned the real estate in question. In order for this court to overturn the trial court's finding, that finding would have to be "contrary to the great weight and clear preponderance of evidence," *Milbauer v. Transport Employes' Mut. B. Soc.* (1973), 56 Wis. 2d 860, 862, 203 N. W. 2d 135; in the present case, the great weight of the evidence supports the trial court's decision.

Marilynn Schaefer also argues that a partnership dealing in real estate is subject to the statute of frauds, and must be evidenced by a writing. It is true that this

---

[3] *See:* sec. 178.04, Stats.:

"(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business. . . ."

court has adopted the minority view that a partnership created to deal in real estate is void unless conforming to the statute of frauds:

"In Wisconsin, contrary to the great weight of authority in this country, a joint adventure or a partnership to engage in the sale or purchase of real estate, is held to be a contract respecting an interest in lands, and void under the statute of frauds, unless in writing, or unless sufficiently performed to take the same out of the statute." *Goodsitt v. Richter* (1934), 216 Wis. 351, 257 N. W. 23.

There was admittedly no written partnership agreement in the present case.

However, an exception to the statute of frauds is made where all parties have performed the contract, indicating their acquiescence in its terms. In *Smith v. Putnam* (1900), 107 Wis. 155, 82 N. W. 1077, 83 N. W. 288, a claimed partnership had been formed to purchase land, money had been invested, and several transactions had been completed and proceeds divided among the partners, when some partners sought to withhold certain proceeds from another. In upholding the existence of an unwritten partnership, the court said (page 163):

"In applying the statute of frauds, courts long since recognized an exception, or more properly a distinction, in cases where a contract void by the statute had been fully executed, and one party sought to retain the fruits of the dealing in defiance of his promises. Such situation was declared to be not within the purpose of, and so not sheltered by, the statute. It has therefore been held in a vast array of decided cases that where the parties have fully executed all parts of such a contract relating to or affecting interests in land, so that the courts do not need to enforce anything with reference to the land itself, the rights and duties of the parties resulting from their dealings may be enforced, and each of them prevented from using that statute, not as a protection against, but as an effective means of, fraud."

Similarly in *Huntington v. Burdeau* (1912), 149 Wis. 263, 270, 135 N. W. 845, where only an accounting of

some amounts due from one real estate partner to another was necessary, the statute of frauds was not a bar to suit based on an unwritten partnership. *See also: Steuerwald v. Richter* (1914), 158 Wis. 597, 149 N. W. 692; *Thompson v. Beth* (1961), 14 Wis. 2d 271, 111 N. W. 2d 171.

The above-cited "performance" cases can be distinguished insofar as they involve suits for proceeds of completed transactions, while in the present case the claimed partnership still owns the land in question, and the judicial determination of whether or not a partnership exists will act indirectly "with reference to the land itself" *(Smith v. Putnam, supra)*. Under the circumstances of this case, however, the "performance" is sufficient to take the claimed partnership agreement out of the statute of frauds. This is not a situation (as in *Smith v. Putnam* and the other cited cases) where a "partner" not holding record title to the land is claiming against the holder, who denies the existence of a partnership. This is a case where the Schaefer brothers purchased land out of a common fund, held record title in both of their names, took possession of, leased, and improved the land on a joint basis, and divided the profits between themselves. After such conduct of this business for over 20 years, it is now sought to wind up its affairs in a manner completely consistent with the long-standing "performance" of the firm. There is no evidence whatsoever that Ben Schaefer would have disputed the existence of a partnership; certainly his wife, in pursuit of a dower interest, should not now be permitted to claim that "performance" was insufficient to demonstrate that the Schaefer brothers fully intended that the remaining properties in inventory should be handled as had all the others.

Wisconsin cases discussing "part performance" of real estate contracts as an exception to the statute of frauds have not demonstrated any hesitation to act directly

"with reference to the land itself" when the evidence shows sufficient part performance, by ordering conveyance to the equitable owner.[4]

"The general rule is that equity will enforce specific performance of an oral agreement to convey land to prevent a fraud where part performance by the purchaser is shown." *Karrels v. Karrels* (1940), 234 Wis. 44, 47, 290 N. W. 624.

In a typical case where an equitable claimant is suing the record owner for conveyance of title, "part performance" must be demonstrated by possession of the land and partial payment of the purchase price, or other acts referable to one party's reliance upon the oral contract, such that failure to enforce the contract would itself work a fraud or hardship on the performing party.[5] In the present case, of course, such criteria for "part performance" are of little relevance, since the "performance" of the Schaefer brothers in paying for and possessing the land in some form of joint ownership is not at issue; the question is what form of joint ownership was intended. The evidence provided by their "part performance" strongly supports the conclusion that the intended form was a partnership.

Marilynn Schaefer also argues that because the deeds to the properties in question conveyed them as estates of inheritance (to Ben and Arthur Schaefer and "their heirs and assigns forever"), Ben and Arthur received estates of inheritance, as tenants in common, and did not take the lands as a business partnership. Words of inheritance, however, refer to the extent of the estate

---

[4] *See also:* 73 Am. Jur. 2d, *Statute of Frauds*, p. 90, sec. 462.

[5] *Marshall & Ilsley Bank v. Schuerbrock* (1928), 195 Wis. 203, 210, 217 N. W. 416; *Beranek v. Gohr* (1951), 260 Wis. 282, 50 N. W. 2d 459; *Wiegand v. Gissal* (1965), 28 Wis. 2d 488, 137 N. W. 2d 412, 138 N. W. 2d 740; *see, generally: Marshall v. Bellin* (1965), 27 Wis. 2d 88, 92, 133 N. W. 2d 751; *Toulon v. Nagle* (1975), 67 Wis. 2d 233, 248, 226 N. W. 2d 480.

granted—a fee simple—and do not define the grantee. This is apparent from statutes making words of inheritance unnecessary to pass a fee in general, sec. 706.10 (3), Stats.,[6] and unnecessary to pass a fee to a partnership in particular, sec. 178.05 (4).[7] *See also:* 23 Am. Jur. 2d, *Deeds,* p. 103, sec. 38. In *Weber v. Nedin* (1932), 210 Wis. 39, 46, 242 N. W. 487, as in the present case, it was argued that the words "heirs and assigns forever" created a tenancy in common, because they were inconsistent with the principle of survivorship inherent in a joint tenancy. This court rejected that argument, holding that a joint tenancy had been created because of other evidence of such an intent. In construing a deed, the purpose of the court is to ascertain the intent of the parties. *Flynn v. Palmer* (1955), 270 Wis. 43, 47, 70 N. W. 2d 231. The words "heirs and assigns forever" manifest no particular intent to create an estate of inheritance. Moreover, here the words of inheritance were part of the standard printed form of deed. They cannot be said, in light of the evidence of intent to create a partnership, to demonstrate any intent whatsoever to take the property as tenants in common.

Apart from the words of inheritance, Marilynn Schaefer argues that the muniment of title should govern; since the bulk of the deeds name as grantees simply

---

[6] "706.10   Forms, construction.

". . .

"(3) In conveyances of lands words of inheritance shall not be necessary to create or convey a fee, and every conveyance shall pass all the estate or interest of the grantor unless a different intent shall appear expressly or by necessary implication in the terms of such conveyance."

[7] "178.05   Partnership property.

". . .

"(4) A conveyance to a partnership in the partnership name, though without words of inheritance, passes the entire estate of the grantor unless a contrary intent appears."

Ben G. and Arthur E. Schaefer, the deeds acted to create a tenancy in common between them. Whatever presumption the muniment of title may ordinarily carry, this court has long held to the principle, now codified in sec. 178.05, Stats., *supra*, that property purchased with partnership funds and appropriated for partnership purposes is presumptively partnership property, regardless of the manner in which title is formally held. *Kyle v. Carpenter* (1907), 130 Wis. 310, 316, 110 N. W. 187:

> "It is elementary that 'real estate purchased for partnership purposes and appropriated to those purposes, paid for by partnership funds and necessary for partnership purposes, always becomes partnership property. Nor does it seem to be material in what manner, or by what agency, the land is bought, or in what name it stands.' Parsons, *Partn.* (4th ed.) §265. In the same section it is said:
>
> "'We consider it an established rule in equity that any party holding the legal title to land, however it may have come to him, will be held as trustee for the partnership, if it be certain that the land was in fact a part of their joint property as partners.'"

*See also:* 60 Am. Jur. 2d, *Partnership,* pp. 23, 24, sec. 94. *Accord: Richtman v. Watson* (1912), 150 Wis. 385, 391, 136 N. W. 797; *Kurowski v. Retail Hdwe. Mut. Fed. Ins. Co.* (1931), 203 Wis. 644, 646, 234 N. W. 900. In *Kyle,* a partner who had been bought out, but had failed to reconvey legal title, subsequently sold lands to a third-party purchaser with alleged knowledge of the situation. The case of *Thompson v. Beth, supra,* involved property purchased by one partner and held in his name, but purchased and used for partnership purposes. Citing *Kyle,* this court held that the manner of purchase and legal tenure were immaterial where the facts disclosed a partnership operation. In the present case, the evidence established both that the real estate was purchased with partnership funds, and that it was purchased and used

for partnership purposes. The fact that legal title was in the individual partners is immaterial under these circumstances.

In summary, the partnership of the Schaefer brothers was not subject to the statute of frauds because it was sufficiently performed to establish its existence. The words of inheritance used in the deeds, and the form in which legal title was held, are immaterial to the determination of whether the real estate in question was partnership property, since the evidence conclusively shows the purchase of the real estate with partnership funds, and its use for partnership purposes.

*Appeal No. 167*

This appeal arises from an order of the trial court dismissing those sections of Marilynn Schaefer's petition not covered by the order concerning the partnership real estate, from which Appeal No. 101 was taken. Respondents moved to dismiss this appeal after it was filed, and in a decision dated August 13, 1974, that motion was granted by this court as to most of the elements of the trial court order. Remaining are only those parts of the order concerning Marilynn Schaefer's requests for a "true and correct" inventory, and for damages from the respondents in connection with the administration of the estate. The only current dispute concerning the inventory involves the partnership real estate dealt with in Appeal No. 101. Since all of the items in Marilynn Schaefer's petition have now been decided adversely to her, there is no basis in the record for any claims against the respondents.

*By the Court.*—Orders affirmed.