Wolfgang SCHYMANSKI, Renate Schymanski and Minna Huss, Appellants,

v.

Klause CONVENTZ and Christa Conventz, Appellees.

No. 6585.

Supreme Court of Alaska.

Oct. 14, 1983.

Ernest Z. Rehbock, Rehbock & Rehbock, Anchorage, for appellants.

Thomas E. Fenton, Fairbanks, for appellees.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and SERDAHELY, Judge.*

## OPINION

SERDAHELY, Judge.

This is an appeal from a decree of the trial court ordering the dissolution of a partnership formed to construct and operate a fishing lodge. Appellants challenge (1) the lower court's determination to treat appellee's personal services as non-cash capital contributions, and/or as services for which appellees were entitled to special remuneration; (2) the specific valuations given by the court to such services; (3) the court's evidentiary rulings regarding the valuation of the lodge; and (4) the court's failure to find misconduct by one partner and to award damages as a result. For the reasons set forth below, we reverse and remand the case for further proceedings in connection with the personal services/non-cash contribution issue.

## FACTUAL BACKGROUND

Appellants Wolfgang and Renate Schymanski and Minna Huss [Schymanskis], and appellees Klaus and Christa Conventz [Conventz], entered into an oral partnership agreement for the purpose of building and operating a fishing lodge at Lake Illiamna. The partnership was on a 50–50 basis as between the two groups. Initially, the two groups were to contribute equal shares of cash and, in addition, each group was to contribute personal services according to their respective expertise—Conventz

---

* Serdahely, Superior Court Judge, sitting by assignment made pursuant to Article IV, Section 16, of the Constitution of Alaska.

through supervising the construction of the lodge and advertising in Alaska; the Schymanskis by handling the promotional campaign in Germany.

On May 24, 1980, the partners signed two agreements drafted by Conventz. Conventz' contend that these documents reflect a modification of the original agreement whereby they would play a more significant role in construction and would manage the lodge for the first season in lieu of making further cash contributions. The Schymanskis claim that they never knowingly acquiesced in such an arrangement and that they did not examine the language of the document because it was represented to them to be a mere formality necessary for incorporation. The Schymanskis also interpret the language contained therein as not conferring a right to compensation upon Conventz, and insist that there was never an agreement to compensate Conventz for his architectural efforts.

The lodge building project suffered delays. The costs of construction ran higher than anticipated and misunderstandings and disagreements arose between the partners. In August of 1980, Wolfgang visited the lodge and was dissatisfied because the interior of the lodge was not yet completed and the lodge failed to meet several health standards. The Schymanski group was also dissatisfied with the accuracy and completeness of Conventz' financial record-keeping. After learning that the partnership funds were being kept in Conventz' personal bank account, the Schymanskis refused to provide further funds until they received a comprehensive accounting of all funds already advanced.

On September 2, 1980, Conventz expressed his desire to terminate the partnership in a letter to the Schymanskis. He also announced to partnership creditors that he would not be liable for any future debts incurred by the partnership.

Lloyd Oatman, a sub-contractor and partner in a Tucson real estate company, made repeated offers to purchase the lodge from the partnership for $350,000 on private credit terms. The Schymanskis refused the offer.

On September 9, 1980, the Schymanskis brought suit seeking a declaratory judgment that certain real estate was partnership property and that a contract regarding it was void as written; an accounting of debts incurred, funds used and earnings received by Conventz; contribution for expenditures made in winding up partnership business; dissolution of the partnership; and damages for financial loss suffered as a result of Conventz' allegedly wrongful breach of the fiduciary partnership relationship and fraudulent dealings.

After a bench trial, the lower court found that the total amount paid out by the partnership for the construction of the lodge was $173,496.64. Of that amount, the trial court further found that the Schymanski group had contributed $133,838.06 in cash and that Conventz had contributed $39,658.48 in money and property plus $70,000 of non-cash contributions, consisting of $50,000 worth of architectural services and $20,000 worth of managerial services, for a total of $109,658.48. The court further declared the partnership dissolved as of September 1, 1980 due to constant disagreement between the partners rather than to any wrongful conduct by any partner, and ordered the lodge to be either sold to Oatman for $350,000 or listed with a real estate agent for $400,000. Partnership proceeds were to be divided so that the Schymanskis would receive the first $24,179.48 with the remainder of the sales proceeds being split equally. The court also found that neither partner group prevailed below.

This appeal ensued with the Schymanskis challenging the trial court's determination to treat Conventz' architectural and managerial services as a $70,000 non-cash capital contribution to the partnership. The Schymanskis also attack the trial court's evidentiary rulings admitting into evidence an unaccepted offer to purchase the lodge and lay opinion as to the value of the lodge, as well as the court's failure to find misconduct on the part of Conventz and further failure to award damages to the Schymanskis.

## CONVENTZ' NON-CASH CAPITAL CONTRIBUTION

To begin with, in reviewing the trial court's challenged findings of fact, we are bound by Civil Rule 52(a), which provides that findings of fact will not be set aside unless clearly erroneous and that due regard must be given to the trial court's opportunity to judge the credibility of the witnesses.

Turning to the Schymanskis' first specification of error, appellants challenge the trial court's finding regarding Conventz' "non-cash contribution" to the partnership. Specifically, Finding of Fact No. 29 provided:

29. The value of Conventz' non-cash contributions is as follows:

| | | |
|---|---|---|
| a. | Architect of both the fishing camp and the subsequent lodge including superintendence of construction and construction work | $50,000 |
| b. | Manager and operator and including defendant Christa Conventz as cook and hand | $20,000 |
| | | $70,000 |

Appellants argue that the record fails to support any finding that the parties had agreed to treat Conventz' personal services as non-cash capital contributions or to otherwise remunerate him for such services. Appellants also argue that the evidence fails to support the trial court's valuation finding of $70,000 regarding Conventz' personal services.

■ This court has previously recognized that the contribution of personal services by a partner' may create a right to share in partnership *profits*. Thus, in *B.B. & S. Construction Co., Inc. v. Stone*, 535 P.2d 271, 274 (Alaska 1975), this court quoted approvingly from *Craig v. Hamilton*, 213 Kan. 665, 518 P.2d 539, 542 (1974) as follows:

Neither law nor custom exalts one type of contribution above another. One partner may put up skill and service as against the money or property provided by the other and be entitled to share equally in the *profits* of the partnership. (Emphasis added).

■ Similarly, this court has previously noted that under appropriate circumstances, personal services of a partner also may constitute a *capital* contribution to the partnership. Thus, in *Coleman v. Lofgren*, 633 P.2d 1365 (Alaska 1981), this court noted, in a footnote accompanying a discussion regarding non-cash capital contributions to a partnership, that:

Contribution by parties to a partnership enterprise need not always be in the form of tangible assets or capital. Partnerships are often formed where one party provides the money and the other party provides labor or services.

*Id.* at 1368 n. 7 (citation omitted).

■ The general rule is that, in the absence of an agreement to such effect, a partner contributing only personal services is ordinarily *not* entitled to any share of partnership capital pursuant to dissolution. *See e.g. Larsen v. Claridge*, 23 Ariz.App. 508, 534 P.2d 439, 440 (1975); *Beaman v. DeShazor*, 197 Or. 669, 255 P.2d 157, 163 (1953); *Hillock v. Grape*, 111 A.D. 720, 97 N.Y.S. 823, 826 (1906). Personal services may, however, qualify as capital contributions to a partnership where an express or implied agreement to such effect exists. *Id.* Thus, in *Craig v. Hamilton, supra,* discussed in *B.B. & S. Construction Co., Inc. v. Stone, supra,* a provision of a written partnership agreement expressly referred to two partners' "contributions" to the partnership in the form of "equipment, technical knowledge, skill and experience" and one partner's "contribution" in the form of cash. *Id.* at 542.[1]

■ To be distinguished from non-cash capital contributions to a partnership is compensation or remuneration for a partner's personal services performed in the course of day-to-day affairs of the partnership. In the absence of an agreement to provide for such compensation, remuneration for a partner's services performed in

---

1. *Accord Thompson v. Beth,* 14 Wis.2d 271, 111 N.W.2d 171, 174–75 (1961) (where the appellate court affirmed a trial court's apparent finding of an implied agreement to treat a partner's services as a non-cash contribution to partnership capital).

the course of partnership affairs is prohibited by statute. Specifically, Alaska's Partnership Act, AS 32.05.130(6), provides:

> [N]o partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs.

The distinction between non-cash capital contributions and remuneration for ordinary services was recognized in *Thompson v. Beth,* 14 Wis.2d 271, 111 N.W.2d 171 (1961), where the Wisconsin Supreme Court analyzed an identical provision of the Wisconsin partnership statute:

> Sec. 123.15(6), Stats., applies where a partner has been active in contributing his skill and labor toward the affairs of the partnership on a day-to-day basis. There, his labor is compensated for by a share in the partnership profits. This section does not apply where the skill and labor of the partner are his contribution to the capital assets of the partnership, as in the instant case. The return of such contribution on liquidation is not remuneration, but a return of capital investment.

*Id.* at 175. *See also Knutson v. Lauer,* 627 P.2d 66, 69 (Utah 1981) ("[I]t is generally true that a partner is not entitled to any remuneration for his services in the absence of an agreement by the partners to that effect. . . .").

In the instant case, it is unclear whether the trial court found an express or implied agreement between the partners to treat Conventz' architectural and managerial services as capital contributions, as services performed in the ordinary course of partnership affairs for which remuneration was required, or both. No specific finding of fact to such effect was made.[2]

Likewise, it is unclear from the lower court's findings what evidentiary basis existed for the court's valuation determination, in Finding No. 29, that Conventz' architectural services were worth $50,000 and that his managerial and operational services were worth $20,000. Again, no specific finding or reference was made regarding the foundation for these valuation findings.

■ In view of the foregoing, we are unable to determine whether the trial court's findings on this issue are clearly erroneous and must be set aside. Accordingly, this aspect of the case must be remanded to the lower court for additional findings, and/or evidentiary proceedings, as may be appropriate, to specifically determine (1) whether an express or implied agreement existed to treat Conventz' personal services as partnership capital, and/or to specifically remunerate him for such services, and if so, (2) the value of such services based on the evidentiary record herein.

## ADMISSIBILITY OF THE UNACCEPTED OFFER TO PURCHASE.

At trial, testimony was admitted, over objection, regarding a $350,000 offer made by Lloyd Oatman to purchase the fishing lodge. The Schymanskis contend this evidentiary ruling was erroneous.

Generally, the majority rule is that unaccepted offers to purchase are not admissible on the issue of market value of real estate. The leading case on this question is *Sharp v. United States,* 191 U.S. 341, 348, 24 S.Ct. 114, 115, 48 L.Ed. 211 (1903), where the

2. In addition to Finding No. 29, discussed above, the trial court also found, in Finding No. 21, that on May 23, 1980, the parties executed two documents. The court found that, "The first document concerned Intricate Bay Lodge, the partnership, and showed the cash contributions of the parties as of May 24, 1980 and indicated that Klaus would have to make an additional contribution by constructing or building the lodge." Exhibit H does indeed list the disparate cash contributions of the two partner groups, and goes on to provide in the same passage that [Conventz] is to construct the lodge in accordance with the lists of materials and blueprints attached and assumes the management of the lodge during the current fiscal year." Although the lower court could well have found, on the basis of the evidence in the record, that this document constituted an agreement between the partners to treat Conventz' personal services as capital contributions to the partnership or to specifically remunerate Conventz for such services, no specific finding to this effect was made.

United States Supreme Court held that testimony by an offeree as to offers he received was properly excluded at trial. The holding in *Sharp* is based, in part, upon the rationale that no opportunity to cross-examine the offeror existed at trial.

This same rationale was emphasized in *Erceg v. Fairbanks Exploration Co.*, 95 F.2d 850, 853–54 (9th Cir.1938) *cert. denied*, 305 U.S. 615, 59 S.Ct. 74, 83 L.Ed. 392 (1938). In *Erceg*, the Ninth Circuit delineated the following three reasons for barring testimony as to unaccepted offers to purchase:

> (1) that such evidence is often speculative and unreliable, (2) there is usually no opportunity for cross-examination of the person who is said to have made the offer, and (3) such evidence injects collateral inquiries tending to confuse the main issue and prolong the trial.

*Id.* at 854.

■ In this case, the offer was made by Oatman, who was available to testify and be cross-examined about the foundation and basis for his offer.[3] In fact Oatman did testify at trial and was extensively cross-examined by Schymanskis' counsel. Moreover, the record reflects that the trial court, as trier of fact, gave particular attention to the foundation for such offer, as well as to the credibility and expertise of the offeror, and was in a position to accord whatever evidentiary weight to such testimony as it deemed appropriate. In view of such circumstances, particularly the availability of the offeror for cross-examination, we cannot conclude that the trial court's evidentiary ruling was erroneous.

In addition, whatever probative effect the unaccepted offer to purchase may have had on the valuation issue, we conclude that the evidence was also properly received by the trial court on the issue of remedies. In partnership dissolution cases, the trial court is not only required to make various proper-

ty valuation rulings, but also to fashion appropriate relief. Here, the lower court relied on the foregoing evidence and in fact ordered that the lodge be sold to Oatman at the terms of his offer, or be listed at $400,-000.[4] For the additional purpose of framing an appropriate remedy, the evidence was relevant and properly admitted.

## ADMISSIBILITY OF LAY TESTIMONY AS TO THE VALUE OF REAL ESTATE.

Under Alaska Rule of Evidence 701, lay opinion testimony is admissible only if it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." Such determinations are within the discretion of the trial judge.

■ On appeal, the Schymanskis argue that Oatman's testimony did not meet this standard. In Alaska, lay testimony offered by the landowner as to property value is admissible because of the owner's presumed knowledge about the value of such property. *Wernberg v. Matanuska Electric Association, Inc.*, 494 P.2d 790, 795 (Alaska 1972); *Gregory v. Padilla*, 379 P.2d 951, 953 (Alaska 1963). The question of the admissibility of a third person's lay opinion, however, has not been previously decided.

In the instant case, the adequacy of the foundation to support Oatman's opinion testimony, and the evidentiary weight to be accorded to such opinion, are matters which fall squarely within the trial court's discretion. *Cf. Greenwood Ranches, Inc. v. Skie Construction Co., Inc.*, 629 F.2d 518, 522–23 (8th Cir.1980) (articulating a lenient standard for admitting lay opinion under the identical federal rule of evidence). Here, after reviewing the record, we conclude that the trial court did not abuse its discre-

---

**3.** Apparently, Conventz offered such evidence for the purpose of proving the value of Conventz' personal services in constructing the lodge, and not for the purpose of valuing of the lodge.

**4.** On remand, the trial court may wish to re-examine the remedies previously ordered, and consider providing for additional remedies in the event that the Oatman offer is no longer available, or that a buyer cannot be found to pay $400,000 and/or that for market reasons, the property cannot be sold at all.

tion in admitting such lay opinion evidence under Rule 701.

 The evidence established that Oatman possessed some first hand knowledge about the property; that Oatman had visited the site for an hour and a half one week prior to giving his testimony; that Oatman had made some inquiries about the real estate market in the area; and that Oatman had some experience and expertise in the real estate field to enable him to evaluate the data he derived from his first hand perceptions. In view of the foregoing, the trial court's evidentiary ruling was not erroneous.

## TRIAL COURT'S FAILURE TO FIND MISCONDUCT ON THE PART OF CONVENTZ.

Finally, at trial, the Schymanskis claimed that Conventz' misconduct, allegedly consisting of his failure to give an accounting, intermingling of partnership funds with his personal account, refusing to continue construction and operation of the lodge, and impairing the credit of his co-partners, entitled them to damages under AS 32.05.-330(b)(1)(B).[5] The trial court, however, did not find that Conventz had in any way violated his fiduciary obligations as a partner in the enterprise. The Schymanskis challenge the lower court's failure to find wrongful conduct on the part of Conventz and to award them damages therefor.

As previously noted under Civil Rule 52(a), "findings of fact shall not be set aside unless clearly erroneous." In many instances, the evidence in this case consisted of the word of one partner against that of the other; the evidence on the issue of the cause or causes for the partnership dissolution, was, in short, in substantial conflict. Given the conflicting testimony on this issue, the trial court apparently chose to believe Conventz' version. There is ample evidence contained in Conventz' testimony to support the court's findings that the partnership was dissolved due to the constant disagreement between the parties rather than to the alleged improper conduct on the part of Conventz. Under such circumstances, we cannot conclude that the trial court's failure to find misconduct on the part of Conventz and to award the Schymanskis damages was clearly erroneous.

## CONCLUSION

In sum, we conclude that the issue of Conventz' non-cash contributions must be remanded to the trial court for more specific findings and/or evidentiary proceedings regarding (1) the existence of any express or implied agreement by the partners to treat Conventz' personal services as (a) capital contributions and/or (b) to specially remunerate him for such services, and (2) the valuation of such services based on the evidentiary record herein.

We further conclude that the trial court did not err in admitting evidence regarding an unaccepted offer to purchase the lodge, and certain lay opinion evidence on the valuation of the lodge, or in failing to find wrongful conduct on the part of Conventz and to award damages to the Schymanskis.

Accordingly, the lower court's judgment is REVERSED and REMANDED, in part, and AFFIRMED in part.

MOORE, J., not participating.

---

5. AS 32.05.330(b)(1)(B) provides:
(b) When dissolution is caused in contravention of the partnership agreement the rights of the partners are as follows.
(1) Each partner who has not caused dissolution wrongfully has

(B) the right, as against each partner who has caused the dissolution wrongfully, to damages for breach of the agreement.