**Wallace L. COLEMAN, Individually and as a partner d/b/a ABC Warehouse Co., Appellant,**

v.

**Wayne LOFGREN, Richard Wright and John Bridgers, Appellees.**

**No. 3815.**

Supreme Court of Alaska.

April 20, 1979.

George Trefry of Holland, Thornton & Trefry, Anchorage, for appellees.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal arises out of the dissolution of a partnership and assumption of the partnership business by appellant Wallace L. Coleman. In 1972, Lofgren, Wright and Bridgers formed a partnership under the name ABC Warehouse as equal general partners. A warehouse structure was subsequently leased from J. B. Gottstein. The partners created an escrow account in the amount of $30,000, dated December 12, 1972, at the First National Bank of Fairbanks for the purpose of securing the lease. On February 1, 1973, a commercial note for $30,020 was signed to cover this account by each of the partners individually, and as partners in ABC Warehouse. The proceeds of the note were deposited to the trust account under the escrow agreement. On June 26, 1973, Bridgers withdrew from the partnership under a written dissolution agreement in which Lofgren and Wright succeeded to all partnership assets and obligations upon payment of a sizable settlement to Bridgers. Shortly thereafter, a third partnership was founded by written agreement incorporating Coleman as the third partner with Lofgren and Wright. Thereafter, Coleman made a series of capital contributions to the business.

The evidence at trial showed that Coleman did not take an active part in management of the partnership. Although he at all times had access to the partnership records, Coleman relied on Lofgren to inform him of partnership affairs. Coleman had no previous experience in the warehousing business and he was brought into the partnership because of his ability to contribute to the partnership's capital.

The third partnership was dissolved upon renewal of the lease of the Gottstein building and a fourth partnership was founded

James K. Tallman, Anchorage, for appellant.

to take over the business. The fourth partnership consisted of Coleman and his sons, Kit and Carson Coleman. There were no formal dissolution papers signed as to the third partnership, although a written assignment was prepared, signed and notarized by Lofgren and Wright. This document purported to assign all rights to the sublease of the Gottstein property and all receivables of ABC Warehouse to the new Coleman partnership. The assignment also expressed as an assumption agreement that "the new Co. owner will take over all payables" for ABC Warehouse and those charged to Associated Buying Company, Inc. and Wayne Lofgren on behalf of ABC Warehouse Company. This assignment was read but not signed by Coleman. However, there was evidence that he accepted it. For example, he identified the assignment as the document which permitted him to take over the business, and he relied on the assignment in asserting title to the $30,000 deposited to secure the lease.

Pursuant to a demand by Gottstein, the bank paid $15,000 of the escrowed funds to cover a rental delinquency, and the premises were vacated. Gottstein indicated that he also intended to satisfy repair bills from the escrow account. Coleman notified the bank that a dispute existed regarding the bills and instructed the bank not to disburse any further funds from the account. The bank then brought an action in interpleader as to the escrow account. The counterclaims which were filed in the interpleader action placed the question of other liabilities of the partnership before the superior court.

Prior to trial, Gottstein was dismissed from the action in exchange for receipt of one-half of the interpleaded funds. The

superior court, after a nonjury trial, found that the Colemans had assumed all the obligations of the warehouse business from the previous partnership and were liable on several specific claims. From this judgment Coleman has appealed.

Coleman asserts for the first time on appeal that the superior court did not have jurisdiction over Kit and W. Carson Coleman. There is no legal authority cited for this contention. It is merely asserted that neither of the Coleman sons appeared before the superior court nor was there any showing that process had been served on them.

The original complaint named "A.B.C. Warehouse Co., a partnership comprised of Wallace L. Coleman, W. Carson Coleman, and Kit L. Coleman," among others, as defendants. Attempts were made by both the bank and Gottstein to serve all three Colemans but they had difficulty locating Wallace L. Coleman and Kit L. Coleman. W. Carson Coleman was given initial notice by telephone. An answer and cross-claim was filed *in pro persona* by Wallace L. Coleman "on behalf of himself, A.B.C. Warehouse Co., and its partners, W. Carson Coleman and Kit L. Coleman." A subsequent amended answer signed by James K. Tallman stated that he was "[a]ttorney for [d]efendants, Wallace L. Coleman, and his partners, W. Carson Coleman and Kit L. Coleman, d/b/a A.B.C. Warehouse Company."

■ Jurisdiction is obtained over a partnership when service is perfected on any member or agent.[1] In addition, assuming *arguendo* that service was not properly effectuated, the issue is waived if not properly raised below.[2] In light of the foregoing,

---

1. Alaska R.Civ.P. 4(d)(5) provides that service shall be made as follows:

    *Partnerships.* Upon a partnership, by delivering a copy of the summons and of the complaint personally to a member of such partnership, or to a managing or general agent of the partnership, or to any other agent authorized by appointment or by law to receive service of process, or to a person having control of the business of the partnership; or if service cannot be made upon any

of them, then as provided by order of the court.

2. Alaska R.Civ.P. 12(h)(1) provides:

    A defense of lack of jurisdiction over the person, improper venue, insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof

we conclude that appellant's jurisdictional contentions are without merit.

Coleman contends:

(1) That he and his sons as incoming partners, he in the third partnership and his sons in the fourth, have no personal liability for partnership debts accruing before they became partners. All such debts, he claims, must be satisfied out of partnership property.

(2) That neither he nor his sons assumed personal liability for prior partnership debts.

(3) That neither he nor his sons assumed debts other than those presented to him in a document prepared by Kathleen Lofgren, the bookkeeper for the prior partnership, because there existed misrepresentations, non-disclosure and lack of fair consideration which constituted a breach of appellee's fiduciary duties and because there was no mutual assent with respect to the undisclosed debts.

■■■ It is true, as Coleman asserts, that an incoming partner is not personally liable upon the prior debts of the partnership, unless he specially contracts to assume such liability. Without a special contract of assumption, the incoming partner's liability for past partnership debts is limited to his interest in the partnership property.[3] However, here the trial court specifically found that the Colemans individually assumed all the obligations of the business. That assumption was expressed in the assignment offered by Lofgren and Wright. As stated above, there was evidence that Coleman had accepted this assignment and thereby adopted the promise it contained. Thus,

the trial court's finding that there was an assumption agreement must be sustained.

Coleman's claims of misrepresentation and absence of mutual assent are grounded on an alleged lack of knowledge of all of the outstanding debts at the time of the assumption. The law requires that a partner must at all times have access to the books of a partnership.[4] In this regard, the superior court found that while Wallace Coleman was a partner in the earlier partnership, he did have access to the records at all times.[5] Further, the trial court found that when the Coleman partnership took control of the business the partnership records remained under its control.[6] No claim is advanced on the basis of lack of access to records.

However, it is asserted that there were positive misrepresentations as to the state of the business. Specifically, Coleman alleges the following:

(1) representations were made by Wright and Lofgren to Coleman while he was a partner that business was good when in fact the partnership was insolvent;

(2) the wages of Kathleen Lofgren as bookkeeper which were due and owing were not part of any record and Coleman reasonably assumed that only current wages were owing, not the accumulated sum of $6,400 which represented work over a period of several months; and

(3) the document given to Coleman shortly before entry into the partnership agreement did not fairly represent the outstanding debts of the business.

---

permitted by Rule 15(a) to be made as a matter of course.

3. AS 32.05.120; AS 32.05.360(g). *See* Uniform Partnership Act (U.L.A.) §§ 17 and 41 and Official Comments at 208–09, 511–14. *See also Wine Packing Corp. of Calif. v. Voss,* 37 Cal. App.2d 528, 100 P.2d 325 (1940).

4. AS 32.05.140 provides:
   *Partnership books.* The partnership books shall be kept, subject to any agreement between the partners, at the principal place of business of the partnership, and every part-

ner shall at all times have access to and may inspect and copy any of them.

5. Findings of Fact (d)(10) stated:
   Throughout the LOFGREN, WRIGHT and WALLACE COLEMAN partnership, all partners had unrestricted access to all partnership records.

6. Findings of Fact (d)(11) states:
   The evidence further shows that the aforementioned partnership records and material remained with the continuing COLEMAN partnership after the LOFGREN and WRIGHT assignment.

In regard to the first of these three claims, it is established that a partner has a fiduciary duty to other partners to disclose information concerning partnership affairs.[7] This duty is codified in AS 32.05.150 which provides:

> *Duty of partners to provide information.* Partners shall provide *on demand* true and full information of all things affecting the partnership to any partner or the legal representative of any deceased partner or partner under legal disability. [emphasis added]

Coleman's claim is that this fiduciary duty to disclose was breached.

Since what is at issue primarily consists of findings of fact by the superior court, our standard of review is whether the superior court's findings are clearly erroneous.[8] In applying this criterion of appellate review, we have concluded that the evidence produced at trial does not require a finding that Wright and Lofgren made specific representations as to the status of the partnership business which would amount to either misrepresentation or a breach of a partner's fiduciary duty. Whatever reliance Wallace Coleman placed on the alleged assertions of business solvency, it appears that he had knowledge of the partnership's need for funds.

As to the matter of wages, Kathleen J. Lofgren, wife of appellee Lofgren, who had acted as bookkeeper for the earlier partnership, submitted on September 10, 1974 (almost three months after the assumption agreement), a bill to the Colemans for $6,400 which covered wages for office and bookkeeping services for the eighteen months before the business was turned over to the Colemans.[9]

Coleman argues that the contention made at trial that he should have expected Lofgren's wage claim does not comport with normal business practices which provide for payment of employees at regular intervals. The superior court, in deciding the issue against Coleman, concluded that Kathleen Lofgren was the partnership's bookkeeper and, although she was also married to one of the partners, she was entitled to be compensated by Coleman, nevertheless.[10] The

---

7. In this regard, AS 32.05.160(a) provides:

   > Every partner shall account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

8. Alaska R.Civ.P. 52(a) provides, in part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge . . . the credibility of the witnesses." *See, e. g., Lewis v. Anchorage Asphalt Paving Co.,* 579 P.2d 532 (Alaska 1978); *Curt's Trucking Co. v. City of Anchorage,* 578 P.2d 975 (Alaska 1978); *Hausam v. Wodrich,* 574 P.2d 805 (Alaska 1978); *Chugach Elec. Ass'n v. Northern Corp.,* 562 P.2d 1053 (Alaska 1977).

9. The text of this request is as follows:

   > This is a written request for my wages for office and bookkeeping services for ABC Distribution Center from Jan. 1973 thru June of 1974 [at] $400.00 per month for a total of $7200.00 of which I have received $800.00. Check # 1359 and 1386. Balance due $6400.00.

10. In its oral decision, the superior court stated:

> And the weakest testimony from the Lofgren/Wright side was on the question of the wage claim of Mrs. Lofgren. I've resolved that against the Colemans' side as well for a variety of reasons, including the fact that some wages were paid to Mrs. Coleman, this does not—there's no suggestion in any of the testimony that this was a mom and pop operation in which Mrs. Coleman's—I'm sorry, Mrs. Lofgren's time was voluntary or was a gratuity to the ABC Warehouse operation. She had her own family business, she was a business person, she is a bookkeeper by trade. This is not an instance where some housewife is coming in and saying that she's entitled to something as a supernumerary in the corporate or the partnership structure. That was her trade, she was working at it, that's not contested. Further, she was offered a position, at least in the transition phase, by the Coleman interest. All of those things go to support her direct testimony that she was working there, she was to be paid, she voluntarily forewent collection due to the cash starvation situation that existed with respect to this young company, which was conceded by Mr. Lofgren. And that is the— as I say, the weakest phase of the proof, and yet once again Mrs. Lofgren testified that whereas there were no entries in the books, as these various exhibits had been marked,

superior court's oral decision indicates that it considered the factual contentions involved and concluded that Mrs. Lofgren was not working gratuitously. Further, the superior court made findings to the effect that it believed her testimony that she had voluntarily foregone collection due to the "cash-starved" condition of the partnership.[11] Although the Colemans had complete possession of the records of the partnership from the time they assumed control over the partnership business, the claim of Mrs. Lofgren was not refuted. Thus, based upon our review of all the relevant evidence as to the issue, we have concluded that the superior court's findings were not clearly erroneous as to Mrs. Lofgren's claim.

■ The most significant of Coleman's assertions of misrepresentation, and the one upon which he bases his claim of lack of mutual assent, is the argument that, at all times prior to the assumption, he had no knowledge of several of the debts that existed and his assumption was made only as to the debts listed in a May 1, 1974, document given to him by Wright and Lofgren. This particular misrepresentation claim is grounded on the fact that there was no full disclosure of partnership affairs at the time of the assumption even though the outgoing partners owed a fiduciary duty of disclosure to the incoming partners. The claim of lack of mutual assent stems also from the fact that in the absence of his actual knowledge of several debts owed by the warehouse business, Coleman reasonably relied on the list of debts provided on May 3, 1974, by Mrs. Lofgren as a complete statement of payables as of May 1, 1974. Thus, he asserts that all he should be liable for is the debts listed on that statement plus the reasonable expenses incurred by the partnership between May 1 and June 20, 1974.

Mrs. Lofgren stated that she was never asked at the time of the dissolution of the third partnership and the assumption by the Colemans to prepare a full and complete audit. As to the document dated May 1, 1974 (defendant's exhibit B–1), Mrs. Coleman testified that it was a work sheet of payables owed by the business and listed only the individual invoices owed and did not include long-term obligations. The superior court, in granting judgment for appellees, found that Coleman had not reasonably relied on this document and that its purpose had not been misrepresented to him. The court stated:

> The most potent evidence [Coleman] had was the [B–1] exhibit, and the fact that that was 45 days out of date seems to me to weigh against his position that that was put forth by Mrs. Lofgren, or indeed intended by him as a final and complete statement of payables. There's been much informality throughout the course of this partnership and [Coleman's attorney has] described it as a botched job of dealing one with the other. I do find from all the testimony and the exhibits that I've seen in the interrelation of them that there is one aspect of it that is as professional as might be, and that is the bookkeeping end of it, presided over with some precision by Mrs. Lofgren. And in that regard I tend to take her testimony at face value as to the purpose for which [B–1] was prepared, an ongoing work sheet sort of thing prepared at various times, having significance on a particular day, but no long range significance as listing precisely what the assets or liabilities might be.

On appeal, Coleman has been unable to apprise us of any specific evidence rebutting the superior court's findings that this

that there were—that there was a memo memorializing this agreement in the back up paperwork. That was pretty hazy, on the other hand it was not followed up at all and certainly it strikes me as incredible that Mrs. Lofgren would have made that statement having had no access to the back up materials. And again the arguments put forward by the Coleman interest against that wage

claim are rendered insubstantial by virtue of the fact that they have had the control of those materials.

11. Mrs. Lofgren, in testifying concerning her claim for wages, stated that although she did not believe the debt for her wages was on the general ledger, she believed it appeared on the accounts payable or some other business record of the partnership.

document was, as Mrs. Lofgren testified, a preliminary work sheet which neither was represented to be a complete accounting nor could have been reasonably relied on as such by Coleman. Thus, we cannot find any basis for holding that the superior court's findings regarding exhibit B–1 were clearly erroneous.[12]

■ Although we have reviewed appellant's other specifications of errors and have found them lacking in merit, we have concluded that one facet of the superior court's decision requires a remand for additional proceedings. The trial court found that a note signed by the withdrawing partners on February 1, 1973, in favor of the First National Bank of Fairbanks in the sum of $30,020 was a partnership obligation for which the successor partners, the Colemans, were primarily liable under their agreement to assume the liabilities of the partnership. However, the partnership records show that on February 1, 1973, Wright and Lofgren were each credited with a capital contribution of $15,000, and the records do not indicate any assets attributable to such a contribution other than the funds received from the First National Bank under the note of the same date. Thus, the indications are very strong that the note proceeds were used to supply the capital contributions of Lofgren and Wright. If this is so, the primary obligation to repay the note should fall on Lofgren and Wright, not on the partnership or on the successor partners.

Because this issue was not sharply focused in the trial proceedings, we shall remand to the trial court so that Lofgren and Wright may be given the opportunity to show, if they can, an independent source for their capital contribution of February 1, 1973. If they fail, the judgment must be modified accordingly.

Affirmed in part, Remanded in part.

12. On this issue, the superior court's Findings of Fact stated:

The COLEMANS also advanced the position that a list, prepared by the partnership bookkeeper, Kathleen Lofgren, (EXHIBIT 'B–1'), contained all of the partnership liabilities which the new partnership agreed to assume. It was their position that the term 'payable' as recited in [the assignment which specified that the new partnership would 'take over all payables'] referred only to those liabilities which appeared on EXHIBIT 'B–1.' The Court is not persuaded by this assertion. Through the uncontroverted testimony of Mrs. Lofgren it was confirmed that EXHIBIT 'B–1' was not prepared as a final list of partnership obligations which the COLEMANS agreed to assume. Rather, it was shown that

this was merely a worksheet kept for everyday bookkeeping purposes and had no long-range significance. Moreover, through WALLACE COLEMAN's own admission, it was established that this list was prepared approximately fifty (50) days prior to the transfer of the business. These factors, together with the inconsistencies in WALLACE COLEMAN's testimony, support the position that the parties intended the COLEMAN defendants to become primarily responsible for all debts of the warehousing business. Accordingly, the Court finds from a preponderance of the evidence, that the COLEMAN defendants did acquire the entire warehouse business and agreed to assume and satisfy all indebtedness attendant thereto.