Wallace L. COLEMAN, individually and as a partner d/b/a A.B.C. Warehouse Co., Appellant,

v.

Wayne W. LOFGREN, Richard Wright, and John Bridgers, Appellees.

No. 5124.

Supreme Court of Alaska.

Sept. 25, 1981.

James K. Tallman, Anchorage, for appellant.

George Trefry, Holland & Trefry, Anchorage, for appellees.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.*

OPINION

RABINOWITZ, Chief Justice.

I.

This marks the second occasion this matter is before us. In *Coleman v. Lofgren,*

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

593 P.2d 632 (Alaska 1979), we held that Coleman, as successor of a dissolved partnership that included Lofgren, Wright and Coleman, had assumed the debts incurred by the former partnership.[1] More particularly, we concluded that these debts became the obligation of a successor partnership between Coleman and his two sons.

In our opinion in the first appeal we determined that one facet of the superior court's decision necessitated a remand for additional proceedings. Our reasons for the remand were explained as follows:

> The trial court found that a note signed by the withdrawing partners on February 1, 1973, in favor of the First National Bank of Fairbanks in the sum of $30,020 was a partnership obligation for which the successor partners, the Colemans, were primarily liable under their agreement to assume the liabilities of the partnership. However, the partnership records show that on February 1, 1973, Wright and Lofgren were each credited with a capital contribution of $15,000, and the records do not indicate any assets attributable to such a contribution other than the funds received from the First National Bank under the note of the same date. Thus, the indications are very strong that the note proceeds were used to supply the capital contributions of Lofgren and Wright. If this is so, the primary obligation to repay the note should fall on Lofgren and Wright, not on the partnership or on the successor partners.

> Because this issue was not sharply focused in the trial proceedings, we shall remand to the trial court so that Lofgren and Wright may be given the opportunity to show, if they can, an independent source for their capital contribution of February 1, 1973. If they fail, the judgment must be modified accordingly.[2]

On remand, the superior court heard extensive testimony, at the conclusion of which it ruled that Lofgren's and Wright's capital contributions did have an independent source. In resolving the issue, the superior court made two related findings. First, it found that:

> Lofgren and Wright have demonstrated by a preponderance of the evidence that Wallace Coleman was informed of the partnership loan with the [FNB] and that all parties in this action considered this debt to be a partnership obligation which was to be satisfied by the partnership assets which had been escrowed to secure performance of the sublease agreement with J. B. Gottstein and Company. Although the partnership records reflected a contribution of $15,000.00 each from Lofgren and Wright on February 1, 1973, this was merely a bookkeeping error which did not accurately reflect the agreement or understanding of any of the partners involved in this action. Through exhaustive testimony and documentary evidence, defendants Lofgren and Wright have demonstrated by a preponderance of the evidence that the note proceeds were not used or intended by them or the [Colemans] to be capital contributions of Lofgren and Wright. Accordingly, this court finds that the primary obligation to repay the note lies with the assuming partners . . . .

In our view, this finding is not clearly erroneous.[3] Mrs. Lofgren, who was the bookkeeper for the partnership, testified that she had decided to make the entry in the capital accounts because it was a convenient place to put a crediting entry and keep the books in balance. She also testi-

---

**1.** For a detailed explanation of the factual circumstances of this case, see *Coleman v. Lofgren,* 593 P.2d 632 (Alaska 1979). The superior court's findings of fact and conclusions of law upon remand are reproduced in full in the appendix to this opinion.

**2.** *Coleman v. Lofgren,* 593 P.2d 632, 638 (Alaska 1979).

**3.** Civil Rule 52(a) requires that, when the issue on appeal primarily consists of findings of fact by the superior court, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge . . . the credibility of the witnesses." *See Coleman v. Lofgren,* 593 P.2d 632, 636 and cases cited at 636 n.8 (Alaska 1979).

fied that she discovered the error in April or May of 1974 and attempted to correct it, but was unsuccessful because the partnership records were by then in the possession of the new Coleman partnership.

Wright and Lofgren both testified that they had never contemplated that the proceeds from the FNB loan would be part of their capital investment in the partnership. They both indicated they considered the loan to be a partnership obligation, and that the loan and the escrow account securing the sublease agreement with J. B. Gottstein were to be a wash transaction. The partnership would pay interest on the note, and when the agreement with J. B. Gottstein ended, or this escrow account was replaced by a new security arrangement, the proceeds of the escrow account would be used to pay off the note, and the interest which had accumulated would be paid to the partners or the partnership.[4]

Wright and Lofgren also testified that prior to his entry into the partnership Coleman had been fully informed of the existence of the FNB note and its relationship to the escrow account securing the sublease

agreement. Both indicated that Coleman had refused to replace John Bridgers, to whose place he succeeded in the partnership, on the note.[5]

The only conflicting evidence was Coleman's testimony that he did not recall the escrow account or the note ever being mentioned, but the superior court specifically stated that it had resolved conflicting issues in favor of the Wright-Lofgren witnesses.

The superior court further concluded that an independent source for the $30,000 in Lofgren's and Wright's capital accounts did exist. It found that "the capital contributions of Lofgren and Wright at the time of Coleman's entry into the partnership were to consist of cash which was actually invested in the business, and past and future credit which Lofgren and Wright were to receive for the duties which they performed in the operation of the warehouse." Additionally, the superior court determined "that the reasonable value of the services and labor so rendered by Lofgren and Wright during their association with the warehouse [was] at least $15,000.00 each."[6]

4. Sigrid Karabelnikoff, a C.P.A. with Arthur Young Co. who prepared the partnership's 1973 and 1974 tax returns, testified that from an accounting standpoint the FNB note would be viewed as a partnership obligation. She indicated that from her past experience it was fairly common for a partnership to have such an obligation, and that typically the interest was paid by the partnership. Karabelnikoff indicated that she never discovered the error because the FNB note was not included in the partnership records sent to Arthur Young Co. for use in preparation of the tax returns. Mrs. Lofgren testified in the previous trial that the interest on the FNB note was paid by the partnership. This is consistent with the contention of Lofgren and Wright that the note was intended to be a partnership obligation.

5. Bridgers was a member of the original partnership set up to run the warehouse. He was replaced by Coleman in 1973. He is a nominal party to this appeal.

   Lofgren also testified that after the partnership ended he had discussed the escrow account and the loan with Carson Coleman who was then managing the warehouse. Lofgren and Wright wanted the Colemans to obtain some other kind of security arrangement so that the FNB note could be paid off, thus relieving Lofgren and Wright of any obligations

with respect to the partnership. (Lofgren, Wright, and Bridgers individually guaranteed the FNB note.) Lofgren testified that Carson indicated to him that the Colemans would get their own security deposit.

6. It appears that the superior court based this ruling on the testimony of Wright and Lofgren concerning the understanding they had with Coleman. Wright's testimony regarding the understanding was as follows:

   Well, if he [Coleman] would put in $30,-000.00, he would be an equal one-third partner, and with what time and effort that we had already put into the business, getting it as far as it was, plus our cash to start the business, and that we would work until it was a paying proposition before we'd ever draw any wages or anything like this .... [I]f there was any additional monies needed, that it would be treated like a loan to the partnership, and whoever come up with more money, why, it would be an obligation to the partnership to repay at the time that the business could afford it.

   Lofgren testified as follows:

   [Coleman] was to come in as an equal partner, with a $30,000.00 capital contribution.... [O]ur [Lofgren's and Wright's] recommendations to Mr. Coleman was that we

Coleman acknowledged that when the partnership was first formed it was agreed that he would be a "silent partner" while Lofgren and Wright would continue to work in the business, and that they had agreed not to take any draws until the business showed a profit. He acknowledged that they would share in the business on an equal basis, but he also maintained he expected that for an equal interest in the partnership all partners should put in the same amount of money. Lofgren denied that he or Wright had ever represented that they had $30,000 to put into the business. Here, again, the superior court resolved conflicting credibility issues in favor of the Wright-Lofgren witnesses.[7]

■ Given the foregoing, we conclude that the superior court's finding that an independent source was proven for the $30,000 in Lofgren's and Wright's capital accounts was not clearly erroneous. Although our remand in regard to the first appeal in the case at bar was worded to require that Lofgren and Wright demonstrate an independent source for their capital contributions, the primary question was who should bear the responsibility for repayment of the $30,000 FNB loan. In this regard we hold that the superior court's determinative findings of fact as to an independent source for Lofgren's and Wright's

capital contributions furnish the requisite foundation for the further conclusion that the $30,000 loan was intended by the Coleman, Lofgren and Wright to be a partnership obligation, and is therefore the responsibility of the Colemans.

## II.

■ Coleman also attacks the trial court's award of attorney's fees following the remand. At the first trial the superior court awarded Lofgren and Wright $6,334.76 in attorney's fees as the prevailing parties. After the trial on remand it awarded Lofgren and Wright another $5,753.46. Thus, Coleman claims that he was forced to pay twice for the same fees incurred by Lofgren and Wright.

The $5,753.46 figure is based on the fee schedule of Civil Rule 82(a)(1),[8] as applied to the value of the note ($30,020) plus interest. There is nothing in the record indicating the basis of the first fee. Our own calculations indicate that $6,334.76 is exactly equal to the Rule 82(a)(1) amount based on all of the items specified in the first judgment, including $30,020 for the note. Since Coleman was apparently assessed fees twice on the note, the attorney's fee award must be vacated, and the case remanded for redetermination of the award.[9]

ATTORNEY'S FEES IN AVERAGE CASES

|  | Contested | Without Trial | Non-Contested |
|---|---|---|---|
| First $2,000 | 25% | 20% | 15% |
| Next $3,000 | 20% | 15% | 12.5% |
| Next $5,000 | 15% | 12.5% | 10% |
| Over $10,000 | 10% | 7.5% | 5% |

---

would perform all the duties necessary to run the warehouse operation, and that we would not make any draws against the partnership, until such time that the partnership was on a paying proposition.

7. Contribution by parties to a partnership enterprise need not always be in the form of tangible assets or capital. Partnerships are often formed where one party provides the money and the other party provides labor or services. *Cutler v. Bowen*, 543 P.2d 1349 (Utah 1975); *Mercado v. Hoefler*, 190 Cal.App.2d 12, 11 Cal.Rptr. 787 (1961); *see also* J. Crane & A. Bromberg, *Law of Partnership* § 12, at 60 n.55 (1968).

8. That rule provides, in relevant part:
Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

9. While the superior court has discretion on remand to determine an appropriate attorney's fee award, we think some possible solutions are indicated. The court might reduce the award by $3,002 (ten percent of the $30,020 included in the first judgment), or it might base its award for the second trial on the "reasonable fee" provision of Rule 82(a)(2); or it might set aside the $6,334.76 award, and make a new award for both trials based on Rule 82(a)(2).

We also note that our calculations indicate that the superior court, in figuring the attorney's fee award on the initial judgment, excluded prejudgment interest from the total on

### III.

■ One additional point remains for discussion. On September 19, 1978, the First National Bank of Fairbanks obtained judgment on the $30,000 note at issue here against Lofgren, Wright, and John Bridgers. On August 29, 1979, the bank obtained a writ of execution to enforce this judgment, and threatened to levy on real property that Lofgren wished to sell. It offered Lofgren and Wright a deal: it would refrain from execution if Lofgren and Wright would agree to begin paying fourteen and one-half percent interest on the note and its accumulated interest. After the superior court ruled, on September 5, 1979, that the note was Coleman's obligation, counsel for Lofgren and Wright demanded that Coleman satisfy the debt, and informed Coleman's counsel that if Coleman refused Lofgren and Wright would be forced to accept the bank's offer. Coleman, contemplating this appeal, evidently did refuse, for Lofgren and Wright both signed the bank's "conditional covenant not to execute."

On October 10, 1979, Lofgren and Wright moved the superior court for permission to file an amended answer and cross-claim alleging, among other things, that Coleman was liable to Lofgren and Wright for the payments the latter had to make pursuant to the fourteen and one-half percent interest agreement. Over Coleman's objections, the superior court approved the filing of the amended pleading. The amended judgment, signed on the same day the superior court granted leave to amend the cross-claim, accordingly placed the liability for the fourteen and one-half percent interest payments upon Coleman. Coleman argues that the superior court erred in allowing the amended pleading. We agree.

In the procedural and factual context surrounding the filing of the amended pleading Coleman was not accorded an appropriate opportunity to dispute the claimed fourteen and one-half percent interest by answer or by trial, since the issue arose subsequent to the trial upon remand and the superior court's judgment was entered on the same day that the "amended" pleading was accepted.[10]

The judgment of the superior court is AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this opinion.

MATTHEWS, Justice with whom CONNOR, Justice, joins, dissenting.

The basis for the remand in the first appeal was to give Lofgren and Wright an opportunity to establish, if they could, an independent source for their capital contributions of February 1, 1973. I believe that they failed to establish such an independent source, and that the superior court's contrary FINDINGS are clearly erroneous.

which the award was based. We have indicated that prejudgment interest is to be included. *ERA Helicopters, Inc. v. Digicon Alaska, Inc.*, 518 P.2d 1057, 1063 (Alaska 1974). Since the attorney's fee award is to be recalculated, it would be advisable to make some adjustment on this point also.

**10.** Under these circumstances, neither subsection (a) nor (d) of Civil Rule 15 authorized the entry of judgment against Coleman for the fourteen and one-half percent in question.

Civil Rule 15(a) provides:

*Amendments.* A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and

leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

Civil Rule 15(d) provides:

*Supplemental Pleadings.* Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

Both Lofgren and Wright were credited with $15,000.00 in capital contributions on February 1, 1973, for the FNB loan taken out to secure the sublease agreement for the warehouse. It is their contention, however, that they had never intended that the proceeds from that loan be treated as a capital contribution by them to the partnership. Rather, they allege a bookkeeping error, and have since claimed that the $30,-000.00 capital entry reflected their services in managing the company.

While it is certainly possible in the abstract that Mrs. Lofgren, the bookkeeper for the business, might have simply made a mistake in entering the loan proceeds under the wrong account; given the facts of this case, such a conclusion is implausible. From the outset, the $30,000.00 loan proceeds were treated as capital contributions. They were treated as such not only by Mrs. Lofgren, but also by Mrs. Karabelnikoff, the firm's accountant, for purposes of her work records and for reconciling the partner's capital accounts in calculating loss deductions for their 1973 and 1974 tax returns.

No records were ever kept by Lofgren or Wright of the services which they allegedly provided to the business for which their $30,000.00 capital is supposed to stand. There was no substantiation of hours or of agreed upon rates of compensation. Indeed, the $30,000.00 compensation figure seems to have evolved out of thin air with no justification other than the obvious need to find an alternative explanation for the February 1, 1973 entry.

In reaching today's result, the majority has ignored the fact that in our prior opinion we rejected Coleman's claim that he should not be charged with debts of the Lofgren-Wright partnership of which he had no knowledge. We did so on the grounds that Coleman had access to the partnership records at all times and thus should have apprised himself of those debts. *Coleman v. Lofgren*, 593 P.2d 632, 635 (Alaska 1979). Now we have learned that those partnership records understated the partnership liability by some $30,000.00. To

be consistent with our prior opinion, Coleman's liability should be reduced by the same amount.

For these reasons I would modify the judgment of the superior court so that the primary obligation to repay the note would fall on Lofgren and Wright individually, not on the partnership or on the successor partners.

APPENDIX

IN THE SUPERIOR COURT FOR THE
STATE OF ALASKA
THIRD JUDICIAL DISTRICT

| | |
|---|---|
| FIRST NATIONAL BANK OF FAIRBANKS, a national banking association, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| J. B. GOTTSTEIN AND COMPANY, INC., et al., | ) ) ) |
| Defendants. | ) ) |
| | ) No. 75–4952 |

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

The above-captioned case came on regularly for trial on the 25th day of July 1977, and was completed on the 1st day of August, 1977. Subsequent to an appeal filed by defendant Wallace L. Coleman, individually and as a partner d/b/a ABC Warehouse Company, the Supreme Court of the State of Alaska remanded part of this action back to the Superior Court. Pursuant to this partial remand, further proceedings were commenced on the 4th day of September, 1979, and concluded on the 5th day of September, 1979. Having fully considered the documentary evidence presented by the parties, and having reviewed the testimony and having weighed the credibility thereof, and having heard the arguments of counsel, and being fully advised in the premises, the Court makes the following:

FINDINGS OF FACT

1. This matter was remanded back to the Superior Court by the Supreme Court of the State of Alaska in *Coleman v. Lof-*

*gren,* 593 P.2d 632 (Alaska 1979). The Supreme Court's partial remand directed this Court to determine whether or not defendants Lofgren and Wright used the proceeds from a note signed February 1, 1973, in favor of the First National Bank of Fairbanks in the sum of $30,020.00, as their capital contributions to the warehouse operation.

2. Liability for the remaining obligations determined by this Court at the conclusion of the trial in this matter held in the summer of 1977, were also appealed by defendant Coleman to the Alaska Supreme Court. The Supreme Court, however, has upheld this Court's findings and judgment on these matters, and, except as otherwise expressly provided for herein, the Findings of Fact and Conclusions of Law dated September 16, 1977, are adopted and incorporated herein.

3. The basis for the Supreme Court's partial remand revolves around certain bookkeeping entries which indicated that Wright and Lofgren were each credited with a capital contribution of $15,000.00 on February 1, 1973, the same date as the aforementioned note with the First National Bank. The Court thusly concluded that:

> ... the indications are very strong that the note proceeds were used to supply the capital contributions of Lofgren and Wright. If this is so, the primary obligation to repay the note should fall on Lofgren and Wright, not on the partnership or the successor partners. 593 P.2d at 638.

4. Because at the original trial of this matter there was little evidence presented by the parties with respect to the issue of Lofgren and Wright's capital contributions to the warehouse business, a substantial amount of additional testimony and documentary evidence was presented at the proceedings commenced September 4, 1979, in order to adjudicate responsibility for repayment of the subject loan. Defendant Wallace Coleman maintained at this proceeding that the Supreme Court's remand limited this Court's inquiry on this issue to a time period prior to February 1, 1973. The Court finds, however, that the Supreme Court did not intend to so restrain this Court's inquiry, but rather to discover if the proceeds of the loan were in fact used by the outgoing partners Lofgren and Wright, to supply their capital contributions to the partnership.

5. With regard to the specific question of whether or not Lofgren and Wright used the note proceeds to supply their capital contributions the Court finds that the testimony and evidence establishes that they did not. This Finding is based upon the following sequence of events which was established at the first trial and at the most recent proceedings in this matter.

(a). On or about February 1, 1973, defendants Wayne Lofgren, Richard Wright, and John Bridgers, in their respective capacities as equal partners in ABC Warehouse Company, executed a partnership promissory note in the amount of $30,020.00 with plaintiff, First National Bank of Fairbanks. From the testimony of George Rayburn, trust officer with plaintiff's bank during the relevant period, and of defendants Lofgren and Wright, it was established that the loan proceeds were then placed in escrow with the trust department of First National Bank of Fairbanks to secure performance of the conditions and covenants of a sublease entered into with former defendant J. B. Gottstein & Co., Inc.

(b) The partnership records which were left with the Colemans by the outgoing partners, Lofgren and Wright on June 20, 1974, (see, Findings of Fact, II(D)7, 11), reflected that the capital accounts of Lofgren and Wright were each credited with a capital contribution of $15,000.00 on February 1, 1973. Through the undisputed testimony of the bookkeeper, Kathleen Lofgren, who made the entries in question, it was established that these bookkeeping entries were not made on February 1, 1973, but rather in May, 1973, when the formal partnership books were opened.

(c) It was further established through the testimony of Kathleen Lofgren that

the entries in question which resulted in the crediting of $15,000.00 each to the capital accounts of Lofgren and Wright were made in error and without consultation or authorization from the partners in the warehouse. Mrs. Lofgren testified, and this Court finds that the bookkeeping entries which are in question were based upon a good faith, but misapplied, bookkeeping theory. That is, after having charged the partnership with the bank obligation (trial exhibit "F"), she then mistakenly assumed that the corresponding entry was to be made to the capital accounts of Lofgren and Wright. Based upon the credibility of the testimony, the Court further finds that defendants Lofgren and Wright neither instructed the bookkeeper to make the entries in question, nor did the partners consider at any time the proceeds of the note to be a part of their capital investment in the business.

(d) The testimony adduced at the recent proceedings further established that the entry of defendant Wallace Coleman into the warehouse partnership was predicated upon his payment of $30,-000.00 to become an equal but silent, non-working partner in the business. Further, it was shown by Lofgren and Wright that Coleman's entry as an equal non-working partner was not made on the basis of equal cash contributions. Rather, by preponderance of the evidence, it was demonstrated at trial that the capital contributions of Lofgren and Wright at the time of Coleman's entry into the partnership were to consist of cash which was actually invested in the business, and past and future credit which Lofgren and Wright were to receive for the duties which they performed in the operation of the warehouse. In this regard, the Court finds that Lofgren and Wright each devoted substantial amounts of time to the operation without renumeration from the partnership for the period from December, 1972, to June 20, 1974.

(e) Subsequent to the accounting entries referenced above which resulted in the improper crediting of the capital accounts of Lofgren and Wright, the bookkeeper discovered her error and made several attempts to correct the mistake. More specifically, a note was written to the accounting firm of Arthur Young & Company by Mrs. Lofgren requesting that she be given the information necessary to reverse the entries in question and outlining the fact that Lofgren and Wright were to have received $15,000.00 in credit to their capital accounts for the time and labor they devoted to the business. Additionally, the Court finds that Mrs. Lofgren made several attempts to secure the partnership records from the Coleman defendants subsequent to June 20, 1974, in order to make the necessary corrections and close out the partnership books of the Lofgren, Wright and Coleman partnership. These attempts were thwarted, however, as a result of the Coleman defendants' unwillingness to review or release the partnership records entrusted to them.

6. It was maintained by Wallace Coleman at the recently concluded proceedings that Lofgren and Wright were not to receive any credit for the work which they performed in the management of the business. Defendant Coleman further asserted that there was no agreement with Lofgren and Wright regarding their being credited with capital contributions as a result of the labor which was performed. Based upon the credibility of the testimony presented, the Court finds, however, that this position is not supported by the evidence. Through Wallace Coleman's own admissions, it was established that he became a non-working partner in the concern and that Lofgren and Wright were charged with and did carry out the day-to-day management of the partnership affairs. The Court further finds that the reasonable value of the services and labor so rendered by Lofgren and Wright during their association with the warehouse to be at least $15,000.00 each.

7. A further finding of this Court is that the allegations raised by Wallace Coleman as regards the fabrication and/or falsifica-

tion of the bookkeeper's memo to Arthur Young and Company to be completely without foundation. The testimony of the accountant with Arthur Young and Company who handled this account, clearly established that a copy of the note written by Mrs. Lofgren had been in their files prior to the institution of this lawsuit and was a good faith attempt to correct a mistaken bookkeeping entry.

8. As a result of the testimony, it is also this Court's finding that Lofgren and Wright have demonstrated by a preponderance of the evidence that Wallace Coleman was informed of the partnership loan with the First National Bank of Fairbanks and that all parties in this action considered this debt to be a partnership obligation which was to be satisfied by the partnership assets which had been escrowed to secure performance of the sublease agreement with J. B. Gottstein and Company. Although the partnership records reflected a contribution of $15,000.00 each from Lofgren and Wright on February 1, 1973, this was merely a bookkeeping error which did not accurately reflect the agreement or understanding of any of the partners involved in this action. Through exhaustive testimony and documentary evidence, defendants Lofgren and Wright have demonstrated by a preponderance of the evidence that the note proceeds were not used or intended by them or the Coleman defendants to be capital contributions of Lofgren and Wright. Accordingly, this Court finds that the primary obligation to repay the note lies with the assuming partners, Wallace L. Coleman, W. Carson Coleman, and Kit L. Coleman, individually, and d/b/a ABC Warehouse Company by virtue of the assignment dated June 20, 1974.

9. At the most recent proceedings a substantial amount of new evidence was presented surrounding both the capital contributions of the respective parties and the bookkeeping errors referenced above. The Court has also been apprised of the fact that the First National Bank of Fairbanks has, since the institution of these proceedings, obtained a judgment against defendants Lofgren, Wright and Bridgers in a separate action to recover the amounts due on the partnership note at issue in this case. Moreover, Lofgren and Wright, with prior notice to the Coleman defendants, entered into an agreement with the First National Bank of Fairbanks which calls for various payments to be made on the judgment and the accrual of interest at the rate of fourteen and a half percent (14½%) commencing September 1, 1979. As a result of these developments, the Court has duly considered and finds that a Motion submitted by Lofgren, Wright and Bridgers to file an amended answer and cross-claim pursuant to Alaska Civil Rule 15(b) is proper and conforms to the evidence which has been presented.

Based upon the foregoing Findings of Fact, the Court makes the following:

## CONCLUSIONS OF LAW

1. This action was set on for further proceedings in accordance with the directions of the Supreme Court in *Coleman v. Lofgren*, 593 P.2d 632 (Alaska 1979).

2. After balancing the credibility of the testimony of the witnesses and weighing the evidence presented herein, the Court concludes that defendants Wright and Lofgren did not use the note proceeds from the First National Bank of Fairbanks to supply their capital contributions to the warehouse partnerships. Rather, their investment consisted of the monies actually invested in and used by the business prior to June 20, 1974, and their time and labor spent in the operation of the warehouse business, which this Court concludes had a reasonable value of at least $15,000.00 each for Lofgren and Wright.

3. The Court concludes that while the Supreme Court declared that the evidence suggested that Lofgren and Wright may have used the note proceeds from the First National Bank to supply money to their capital accounts, this was due to a misapplied bookkeeping theory, which this Court was not made aware of until further proceedings were commenced. In order to fully understand the nature and circumstances

surrounding this error and to justly determine liability on the note, this Court was required to look to events which occurred before and after the bookkeeping entries in question. Accordingly, this Court concludes that the Supreme Court did not intend by its Opinion to limit this Court's inquiry to events that occurred on or before February 1, 1973, since to do so would provide no meaningful resolution to the primary questions of the nature of Lofgren and Wright's capital contribution and primary responsibility for repayment of the loan with plaintiff.

4. This Court also concludes that the promissory note with the First National Bank of Fairbanks was a partnership obligation which the Coleman defendants agreed to assume and satisfy by virtue of the assignment dated June 20, 1974. Accordingly, defendants Lofgren, Wright and Bridgers are entitled to look to the Colemans for satisfaction and/or exoneration of all liability attendant thereto. This includes, but is not limited to, the judgment which the First National Bank of Fairbanks has received against those defendants in an action entitled "First National Bank of Fairbanks, plaintiff, v. ABC Warehouse, et al." (Case No. 771404) filed in the State of Alaska, Fourth Judicial District at Fairbanks, which is presently accruing interest at the rate of fourteen and a half percent (14½%) per annum, and all costs incurred by Lofgren, Wright and Bridgers as a result of that judgment.

5. The Court further concludes that the Motion submitted by Lofgren, Wright and Bridgers to file an amended answer and cross-claim under Alaska Civil Rule 15(b) was proper, timely filed, and reflects the evidence and issues presented in this action.

/s/ Judge Ripley